TATE ACCESS FLOORS, INC. and
Tate Access Floors Leasing, Inc.,
Plaintiffs–Cross Appellants,

v.

MAXCESS TECHNOLOGIES, INC.,
Defendant–Appellant.

Nos. 99–1347, 99–1348.

United States Court of Appeals,
Federal Circuit.

Aug. 1, 2000.

denying its combined motion for judgment as a matter of law and for a new trial, following a jury verdict in favor of Tate Access Floors, Inc. and Tate Access Floors Leasing, Inc. (collectively "Tate Access"), holding that claims 1–12 of U.S. Patent 4,625,491 are not invalid and were literally infringed. *See Tate Access Floors, Inc. v. Maxcess Techs., Inc.*, No. Y–97–4213 (D.Md. Mar. 5, 1999) (informal order). Tate Access cross-appeals from the district court's decision denying its motion to amend the judgment by increasing damages, its motion for attorney fees, and its motion for a permanent injunction.[1] *See id.* at 1. For the reasons set forth in this opinion, we affirm-in-part, reverse-in-part, vacate-in-part, and remand.

## BACKGROUND

Tate Access's '491 patent is directed to an "elevated floor panel" with a laminate floor covering. Elevated floors, also known as "access floors," typically include an array of square floor panels that are supported at their corners by pedestals, thus providing a space underneath the floor through which wires and other equipment may be routed. *See* '491 patent, col. 1, ll. 12–19. Individual floor panels often have a floor covering laminated to their upper surface that provides an attractive floor appearance. *See id.* at col. 1, ll. 22–30. Such floor panels also generally have a separate trim strip around their border, usually of a color that contrasts with that of the laminate floor covering, that provides an aesthetically pleasing appearance and protects the edges of the floor covering from damage. *See id.* at col. 1, ll. 33–42.

The '491 patent contains thirteen claims, the first twelve of which are at issue. Independent claim 1 reads as follows:

1. A floor panel for elevated floors comprising a rectangular base structure

Darle M. Short, Oliff & Berridge, PLC, of Alexandria, Virginia, argued for plaintiffs-cross appellants. With him on the brief were James A. Oliff, Thomas J. Pardini, and Paul T. Bowen.

Allen M. Sokal, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendant-appellant. With him on the brief were Donald R. Dunner, Michael A. Morin, and Edna Vassilovski. Of counsel on the brief were Nagendra Setty, William H. Needle, and Bernard L. Zidar. Of counsel were James R. Burdett, and Mary Jane Saunders, Venabel, Baetjer, of Washington, DC.

Before MICHEL, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

Maxcess Technologies, Inc. appeals from the decision of the United States District Court for the District of Maryland

---

1. We consider Tate Access's "submission of permanent injunction order" to be a motion for a permanent injunction.

adapted to be supported at its corners and providing a load surface operable to support loads thereon, a floor covering mounted on said load surface providing a decorative exposed surface layer on the side thereof opposite said load surface, said floor covering providing *an inner body portion* having an appearance contrasting with the appearance of said decorative surface layer, said floor covering providing a border along the edges of said panels along which said decorative surface layer is removed to expose said inner body portion and thereby provide *an integral contrasting border* around said decorative surface layer.

*Id.* at col. 4, l. 67 to col. 5, l. 11 (emphasis added). Claim 8, the only other independent claim at issue, reads as follows:

8. A floor panel comprising a rectangular support structure providing a load surface operable to support loads thereon, a layered laminated floor covering mounted on said load surface providing a single visible decorative layer along the side of said floor covering remote from said load surface, said floor covering also providing *an inner layer* contrasting with said decorative layer having a thickness substantially greater than the thickness of the decorative layer adjacent to said decorative layer along the side thereof facing said load surface, said floor covering providing *a border* extending along the edges of said panel along which the decorative layer is removed to expose said inner layer.

*Id.* at col. 5, l. 37 to col. 6, l. 11. Claim 12, which depends from claim 10, recites that "said inner layer is black." *Id.* at col. 6, ll. 24–25.

Figure 4 of the patent illustrates an embodiment of the claimed floor panel as follows:

**FIG.4**

As illustrated in Figure 4, each floor panel 10 has a floor covering 12 that is adhesively bonded to the panel base or body 13. *See id.* at col. 3, ll. 18–20. The floor covering 12 has an upper surface 21 that is provided by a layer of clear resin 22. *See id.* at col. 3, ll. 23–24. Underneath the clear resin 22 is a decorative layer 23, four backing layers of black paper 26, 27, 28, and 29, and several layers of brown paper 31 and 32. *See id.* at col. 3, ll. 24–30. The edges of the floor covering 12 are "scarfed," *i.e.*, cut away, to expose one of the backing layers 26 through 29, thereby providing an integral border or edge trim 14. *See id.* at col. 2, ll. 53–54; col. 3, ll. 45–48. Although the illustrated embodiment discloses backing layers 26 through 29

with a black color, the written description teaches that the backing layers **26** through **29** may be formed with other colors that are uniform and that contrast with the color of the decorative layer **23**. *See id.* at col. 4, ll. 52–60.

The accused product, Maxcess's Duratrim floor panel, is structurally similar to the claimed invention and is depicted in the following drawing:

As depicted in the above drawing, the Duratrim floor panel **10** has a floor covering **12** that is mounted on the load surface of the base structure **13**. The floor covering **12** has a decorative exposed layer **23**, and has an inner body portion **IB** comprised of several backing layers of standard brown kraft paper **L1** through **L5**. Along the edges of the floor covering **12**, there is an integral contrasting border or trim **14** below the surface of the decorative layer **23** that exposes the backing layers **L1** through **L5**, which comprise the inner body portion **IB**.

Tate Access filed suit against Maxcess, alleging that Maxcess's Duratrim floor panel infringed claims 1–12 of the '491 patent. During trial, the district court construed the term "inner body portion" to mean "the layers of paper which are below the top decorative layer and contrast in uniform appearance with the top decorative layer." J.A. at 28. The court construed the term "integral" to mean that "the edges are formed by the laminated floor covering without a separate border trim strip." *Id.* The jury returned a verdict in favor of Tate Access, concluding

that the asserted claims were not shown to be invalid, and finding that they were literally infringed. *See* J.A. at 42–45 (special verdict form). The jury also found Maxcess's infringement to be willful, and awarded Tate Access $2,218,522 in damages for lost profits on all of Maxcess's sales. *See id.*

The district court denied Maxcess's subsequent motion for judgment as a matter of law that the asserted claims were not infringed and that Tate Access was not entitled to lost profits. The court also denied Tate Access's motion to amend the judgment by increasing damages, its motion for attorney fees, and its motion for a permanent injunction. Both parties appeal from the district court's decision denying their respective post-trial motions. *See* J.A. at 2 (informal order). We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1) (1994).

## DISCUSSION

### A. *Standards of Review*

Judgment as a matter of law ("JMOL") is appropriate when "a party has been fully heard on an issue and there

is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). We review a district court's denial of a motion for JMOL *de novo*, reapplying the JMOL standard used by the district court. *See Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 824, 49 USPQ2d 1865, 1869 (Fed.Cir.1999). To prevail, "an appellant must show that the jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied from the jury's verdict cannot in law be supported by those findings." *Celeritas Techs., Ltd. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1358, 47 USPQ2d 1516, 1519 (Fed.Cir. 1998) (internal quotation marks omitted). On appeal, this court must consider the record evidence in the light most favorable to the non-movant, "drawing all reasonable inferences in its favor, without disturbing the jury's credibility determinations or substituting our resolutions of conflicting evidence for those of the jury." *Applied Med. Resources v. U.S. Surgical*, 147 F.3d 1374, 1377, 47 USPQ2d 1289, 1290 (Fed. Cir.1998).

■■ A determination of infringement requires a two-step analysis. *See Gentry Gallery, Inc. v. Berkline Corp.*, 134 F.3d 1473, 1476, 45 USPQ2d 1498, 1500 (Fed. Cir.1998). "First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process." *Id.* (quoting *Carroll Touch, Inc. v. Electro Mechanical Sys., Inc.*, 15 F.3d 1573, 1576, 27 USPQ2d 1836, 1839 (Fed.Cir.1993)). "Literal infringement requires that every limitation of the patent claim be found in the accused device." *General Mills, Inc. v. Hunt–Wesson, Inc.*, 103 F.3d 978, 981, 41 USPQ2d 1440, 1445 (Fed.Cir.1997). "An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently." *Cybor Corp. v.*

*FAS Techs., Inc.*, 138 F.3d 1448, 1459, 46 USPQ2d 1169, 1177 (Fed.Cir.1998) (en banc).

■■ Claim construction is an issue of law, *see Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71, 34 USPQ2d 1321, 1322 (Fed.Cir.1995) (en banc), *aff'd*, 517 U.S. 370, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996), that we review *de novo*. *See Cybor*, 138 F.3d at 1456, 46 USPQ2d at 1172. Determination of infringement, whether literal or under the doctrine of equivalents, is a question of fact. *See Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353, 48 USPQ2d 1674, 1676 (Fed.Cir.1998).

■ Following a jury verdict of infringement, we review a district court's denial of a permanent injunction under 35 U.S.C. § 283 for abuse of discretion. *See Odetics, Inc. v. Storage Tech. Corp.*, 185 F.3d 1259, 1272, 51 USPQ2d 1225, 1233 (Fed.Cir.1999). Likewise, we review a district court's denial of a motion for increased damages under 35 U.S.C. § 284 for abuse of discretion. *See Jurgens v. McKasy*, 927 F.2d 1552, 1557, 18 USPQ2d 1031, 1035 (Fed.Cir.1991). "Determining whether a case is exceptional and whether attorney fees should be granted under 35 U.S.C. § 285 is a two-step process." *Enzo Biochem, Inc. v. Calgene, Inc.*, 188 F.3d 1362, 1370, 52 USPQ2d 1129, 1134 (Fed. Cir.1999). "The district court must first determine whether the case is exceptional, a factual determination that we review for clear error; if the case is found to be exceptional, the court must then determine whether attorney fees should be awarded, a determination that we review for abuse of discretion." *Id.* at 1370, 188 F.3d 1362, 52 USPQ2d at 1134–35.

■ In reviewing a district court's exercise of discretion, we determine "whether (1) the decision was clearly unreasonable, arbitrary, or fanciful; (2) the decision was based on an erroneous conclusion of law; (3) the court's findings were clearly erroneous; or (4) the record contains no

evidence upon which the court rationally could have based its decision." *Institut Pasteur v. Cambridge Biotech Corp. (In re Cambridge Biotech Corp.)*, 186 F.3d 1356, 1369, 51 USPQ2d 1321, 1329 (Fed.Cir. 1999).

## B. Claim Construction

### 1. Claims 1–7

Maxcess argues that the district court erred in its claim construction by failing to construe claim 1 as requiring a three-part sandwich structure, with an "inner body portion" between the top decorative layer and the layers of brown kraft paper. Maxcess contends that the "inner body portion" cannot consist of brown kraft paper and must have a single uniform appearance that contrasts with the decorative surface layer. Maxcess further contends that the claimed "integral contrasting border" must be formed solely by removing the edge of the decorative surface layer to expose the "inner body portion" to view.

Tate Access responds that the claimed "inner body portion" should not be limited to the three-part structure disclosed in the preferred embodiment and that the district court misconstrued "inner body portion" as requiring a "uniform appearance," which is a limitation found in dependent claim 2, not claim 1. Tate Access further contends that the district court's construction of the term "integral contrasting border" is essentially consistent with Maxcess's proposed construction, except that the district court's construction does not require that the inner body portion be exposed to view. Tate Access also argues that Maxcess is estopped from challenging the district court's claim construction because Maxcess is asserting a new claim construction that was not presented to that court, and because the court adopted the definitions of "inner body portion" and "integral con-

trasting border" that were proposed by Maxcess.

In interpreting claims, a court "should look first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582, 39 USPQ2d 1573, 1577 (Fed.Cir. 1996). Absent an express intent to impart a novel meaning, "terms in a claim are to be given their ordinary and accustomed meaning." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1249, 48 USPQ2d 1117, 1121 (Fed.Cir.1998); *Carroll Touch*, 15 F.3d at 1577, 27 USPQ2d at 1840 ("[T]he words of a claim are generally given their ordinary and accustomed meaning, unless it appears from the specification or the file history that they were used differently by the inventor.").

#### a) Inner Body Portion

As an initial matter, we do not agree with Maxcess's assertion that the term "inner body portion" must be construed as requiring a three-part sandwich structure. The ordinary meaning of the term "inner" does not require the "inner body portion" to be located in the middle of a three-part structure. Rather, given its ordinary meaning, the term "inner" merely denotes that the "inner body portion" is located inside or within the decorative surface layer. *See, e.g.*, Webster's New World Dictionary 947 (3d ed.1988) (defining "inner" as "located farther within; interior; internal [inner organs]").

This interpretation is supported by the specification. The abstract of the disclosure, for example, states that "[t]he laminate is provided with a decorative exposed surface and an *inner body portion* rearwardly therefrom having a color contrasting with the decorative exposed surface." '491 patent, Abstract (emphasis added).[2] Similarly, the written description

---

**2.** Aside from its appearance in the claims, the only other reference to an "inner body por-

tion" is found in the abstract. However, as we have previously stated, in determining the

states that "[r]earwardly of the decorative paper, the floor covering material is provided with layers of material having a contrasting color with respect to the decorative paper." *Id.* at col. 1, ll. 63–65. Thus, in light of the specification, we conclude that the term "inner body portion" simply means the layers of laminated material that are located "rearward," *i.e.*, below, the decorative surface layer, and that contrast in color with the decorative surface layer.

We also do not agree with Maxcess that the "inner body portion" must have a single uniform appearance, and cannot consist of brown kraft paper. Claim 1 requires that the floor covering provide "an inner body portion having an appearance *contrasting* with the appearance of said decorative surface layer." *Id.* at col. 5, ll. 4–7 (emphasis added). Noticeably absent from the claim language is any requirement that the inner body portion have a single "uniform appearance," [3] or that it not consist of brown kraft paper. Rather, the claim merely requires that the inner body portion have an appearance that contrasts with that of the decorative surface layer.

■ Our conclusion is further supported by the written description, which states that although the four backing layers immediately beneath the decorative layer may be black in color (as in the preferred embodiment), they "may also be formed of other colors, which should preferably contrast with the color of the decorative surface layer." *Id.* at col. 4, ll. 52–57. The written description also states that "it is *desirable* that these backing layers, even if formed of other colors, be

uniform in their color." *Id.* at col. 4, ll. 57–59 (emphasis added). It, however, does not state that the entire "inner body portion" must be uniform in appearance, or that the "inner body portion" cannot consist of brown kraft paper. Moreover, we note that even in the preferred embodiment, "[i]mmediately below the lowermost layer of black paper 29 are several layers of brown paper 31 and 32." *Id.* at col. 3, ll. 28–30. We thus conclude that an "inner body portion" is not limited to a single uniform appearance,[4] and may consist of brown kraft paper.

■ Maxcess alternatively argues that the claimed " 'inner body portion' cannot consist of *only* brown kraft paper because, in the preferred embodiment, the 'integral contrasting border' is formed by exposing black paper layers while avoiding exposure of brown layers." *See id.* at col. 3, ll. 54–58. Although claims must be read in light of the specification of which they are a part, *see Renishaw,* 158 F.3d at 1248, 48 USPQ2d at 1120, it is improper to read limitations from the written description into a claim, *see Kemco Sales, Inc. v. Control Papers Co.,* 208 F.3d 1352, 1362, 54 USPQ2d 1308, 1314 (Fed.Cir.2000). Moreover, "although the specification may well indicate that certain embodiments are preferred, particular embodiments appearing in the specification will not be read into the claims when the claim language is broader than such embodiments." *Id.* Absent from claim 1 is any claim language precluding the inner body portion from consisting solely of brown kraft paper, or paper of any other color for that matter.

---

scope of a claim, the abstract of a patent is a potentially useful source of intrinsic evidence as to the meaning of a disputed claim term. *See Hill–Rom Co. v. Kinetic Concepts, Inc.,* 209 F.3d 1337, 1341 n. *, 54 USPQ2d 1437, 1440 n. 1 (Fed.Cir.2000).

3. The absence of a "uniform appearance" limitation in claim 1 is further emphasized by the presence of a "uniform color" limitation in dependent claims 2 and 5.

4. While Maxcess argues that the use of the indefinite articles "a" and "an" in the specifi-

cation requires that the "inner body portion" have a single color or appearance, this contention goes too far. As we have previously explained, it is generally accepted in patent parlance that "a" or "an" can mean "one or more." *See, e.g., Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 977, 52 USPQ2d 1109, 1112 (Fed.Cir.1999). In view of the embodiment disclosed in the specification, it is clear that this was the meaning intended by the inventors.

*See* '491 patent, col. 5, ll. 4–11. We therefore agree with Tate Access that the claimed "inner body portion" is not limited to the specific structure disclosed in the preferred embodiment and thus may consist solely of brown paper. *See id.* at col. 3, ll. 21–30, Fig. 4.

### b) Integral Contrasting Border

▬ We next turn to Maxcess's contention that the claimed "integral contrasting border" must be formed solely by removing the edges of the decorative surface layer "to expose" the inner body portion. Tate Access responds that Maxcess's proposed construction is largely consistent with that of the district court, except for its requirement that the inner body portion be exposed to view.

We conclude that the district court did not err in construing the term "integral." Claim 1 recites that an "integral contrasting border" is provided by removing the edges of the decorative surface layer "to expose" the inner body portion. *See id.* at col. 5, ll. 7–11. The district court also correctly construed the term "to expose" to mean "to uncover or to reveal," and the term "integral" to mean that "the edges are formed by the laminated floor covering without a separate border of trim." J.A. at 28. The court's construction of those terms is consistent with their ordinary meaning. *See, e.g.,* Webster's New World Dictionary 479 (3d ed.1988) (defining "expose" as "to allow to be seen; disclose; reveal"); *id.* at 701 (defining "integral" as "made up of parts forming the whole").

The district court's interpretation is also consistent with the written description, which states that "the surface layer of protective material and the layer of decorative paper are cut away along the edge of the floor covering to expose the inner layers." *See* '491 patent, col. 1, l. 67 to col. 2, l. 4. Moreover, it is clear from the written description that the edges of the decorative surface layer are removed to expose the inner body portion in order to make the backing layers visible and to

provide a trim that is aesthetically pleasing. *See id.* at col. 1, ll. 39–40; col. 1, ll. 52–56; col. 2, ll. 16–17. We therefore conclude that the term "integral contrasting border" should be construed as an edge or trim formed by removing the edges of the decorative surface layer to uncover or reveal the inner body portion.

As for Tate Access's argument that Maxcess is estopped from challenging the district court's construction of the terms "inner body portion" and "integral," we need not deal with that argument because we agree with Tate Access's arguments regarding claim construction.

### 2. *Claims 8–12*

The district court did not construe the terms "inner layer" and "border" in claim 8. Maxcess argues that these terms should have been construed in the same manner as it argues the terms "inner body portion" and "integral contrasting border" should have been construed in claim 1. Maxcess asserts that while claim 8 uses the term "layer" instead of "body portion," there is no basis for interpreting the two terms differently. Maxcess also asserts that, although the "border" in claim 8 is not modified by the term "integral," it is formed in the same manner as, and therefore necessarily results in, the same integral border recited in claim 1. Tate Access responds that the limitations of claim 1 should not be read into claims 8–12. Tate Access notes that the disputed terms in claims 1 and 8 are defined in different ways, and that Maxcess's assertions are not supported by the written description or the prosecution history.

▬ As an initial matter, we do not agree with Tate Access's argument that the terms "inner layer" and "border" in claim 8 must be interpreted differently from the terms "inner body portion" and "integral contrasting border" in claim 1 because they do not include the terms "body portion" and "integral." While two claims of a patent are presumptively of

different scope, the doctrine of claim differentiation cannot broaden claims beyond their permissible scope. *See Kraft Foods, Inc. v. International Trading Co.,* 203 F.3d 1362, 1368, 53 USPQ2d 1814,1818 (Fed.Cir.2000). "[T]hat the claims are presumed to differ in scope does not mean that every limitation must be distinguished from its counterpart in another claim, but only that at least one limitation must differ." *Id.* Moreover, "[t]hat a patentee chose several words in drafting a particular limitation in one claim, but fewer (though similar) words in drafting the corresponding limitation in another, does not mandate different interpretations of the two limitations, since defining a state of affairs with multiple terms should help, rather than hinder, understanding." *Id.* (internal quotation marks omitted). Thus, the use of the terms "inner layer" and "border" in claim 8, as opposed to "inner body portion" and "integral contrasting border" in claim 1, does not mandate different constructions of these limitations.

■ We agree with Maxcess that the term "inner layer" in claim 8 should be construed in the same manner as the "inner body portion" in claim 1 because they are used interchangeably in the specification. The abstract states that "[a] border is provided around the edge of the panel by cutting away the decorative surface to expose the contrasting *inner body portion.*" '491 patent, Abstract (emphasis added). The abstract further states that "[t]he laminate is provided with a decorative exposed surface and an *inner body portion* rearwardly therefrom having a color contrasting with the decorative exposed surface." *Id.* (emphasis added). In a similar fashion, the summary of the invention states that "the surface layer of protective material and the layer of decorative paper are cut away along the edge of the floor covering to expose the *inner layers* and provide a contrasting color integral border." *Id.* at col. 1, l. 67 to col. 2, l. 3 (emphasis added). The summary of the invention also states that "[r]earwardly of the decorative paper, the floor covering material is provided with *layers* of material having a contrasting color with respect to the decorative paper." *Id.* at col. 1, ll. 63–65 (emphasis added). Thus, it is readily apparent that the terms "body portion" and "layer" are used interchangeably in the specification, and therefore should be construed in the same manner.[5]

■ We also agree with Maxcess that, despite the absence of the modifier "integral," the term "border" in claim 8 should be construed in the same manner as the term "integral contrasting border" in claim 1. Claim 1 recites "a border along the edges of said panels along which said decorative surface layer is removed to expose said inner body portion and thereby provide an *integral contrasting border* around said decorative surface layer." *Id.* at col. 5, ll. 8–11 (emphasis added). Similarly, claim 8 recites "a *border* extending along the edges of said panel along which the decorative layer is removed to expose said inner layer." *Id.* at col. 6, ll. 9–11 (emphasis added). While the phrase "and thereby provide an integral contrasting border around said decorative surface layer" is absent from claim 8, it is nonetheless clear from the claim language that both the "integral contrasting border" in claim 1 and the "border" in claim 8 are formed by removing the edges of the decorative surface layer to expose the inner body portion or layer. We thus conclude that the "border" limitation in claim 8 should likewise be construed as an edge or trim formed by removing the edges of the decorative sur-

5. Tate Access correctly notes that, unlike claim 1, claim 8 recites that the "inner layer" has "a thickness substantially greater than the thickness of the decorative layer" and is "adjacent to said decorative layer along the side thereof facing said load surface." While the presence of these additional limitations may result in the scope of claim 8 being narrower than that of claim 1, they do not provide a basis for interpreting the disputed claim terms differently. *See Kraft,* 203 F.3d at 1368, 53 USPQ2d at 1818.

face layer to uncover or reveal the inner body portion.

However, even though we agree with Maxcess that the disputed terms in claim 8 should be construed in the same manner as the corresponding terms in claim 1, this proposition does not lead to the construction of claims 8–12 sought by Maxcess because we do not agree with its proposed construction of claim 1. In other words, even though we agree with Maxcess that the disputed limitations in claims 1 and 8 should be construed in the same manner, that construction must be consistent with our previous construction of the "inner body portion" and "integral contrasting border" limitations in claim 1.

### C. Infringement

■■■■ Maxcess argues that the district court erred in denying Maxcess's motion for JMOL because Tate Access failed to establish either literal infringement or infringement under the doctrine of equivalents. Maxcess contends that its Duratrim floor panel does not literally infringe the claims of the '491 patent because it does not have a three-part "sandwich" structure with a uniformly colored "inner body portion" and "integral contrasting border." Maxcess further contends that the accused floor panel does not infringe under the doctrine of equivalents, and that Tate Access failed to present any particularized testimony or linking argument on that issue.

Tate Access responds that the district court did not err in denying Maxcess's motion for JMOL on the issue of infringement. Tate Access argues that, based on the court's construction of the terms "inner body portion" and "integral contrasting border," there was substantial evidence to support the jury's finding of literal infringement. Tate Access alternatively argues that Maxcess's floor panel infringes under the doctrine of equivalents. Tate Access contends that there was unrebutted testimony that there are

no substantial differences between the claimed and accused floor panels.

In light of our construction of the disputed claim limitations, we conclude that there is substantial evidence to support the jury's finding that claims 1–11 were literally infringed by the accused floor panel. Properly construed, the "inner body portion" limitation refers to the layers of laminated material that are located "rearward," i.e., below the decorative surface layer and that contrast in color with the decorative surface layer. Having previously concluded that the "inner body portion" does not require a three-part "sandwich" structure or a single uniform appearance, and may consist solely of brown kraft paper, we further conclude that this claim limitation is met by the accused floor panel. First, it is undisputed that the accused floor panel has several layers of brown kraft paper located beneath the decorative surface layer. Second, notwithstanding Maxcess's contention that its floor panel does not infringe because it has a two-part structure, we conclude that the "inner body portion" claim limitation reads on a two-part structure, i.e., one in which one body portion is located inside or within the other. Finally, while Maxcess asserts that its floor panel does not have an inner body portion with a uniform appearance, the claimed "inner body portion" is not limited to a single uniform appearance, and Maxcess does not dispute that its floor panel has layers of brown kraft paper that contrast in appearance with the decorative surface layer. We thus conclude that the "inner body portion" limitation is met by the accused floor panel.

Maxcess additionally argues that its floor panel does not infringe because it does not have an "integral contrasting border." We disagree. Properly construed, the claimed "integral contrasting border" refers to the edge or trim formed by removing the edges of the decorative surface layer to uncover or reveal the inner body portion. Having previously concluded that

the inner body portion may consist solely of brown kraft paper, and given that Maxcess does not dispute that the layers of brown kraft paper in its floor panel contrast in appearance with the decorative surface layer, it is beyond dispute that the accused panel has an edge or trim formed by removing the edges of the decorative surface layer to uncover the inner body portion.

Maxcess further argues that the border on its floor panel is not "integral" because it must be painted. We again disagree. As we have previously explained:

> It is fundamental that one cannot avoid infringement merely by adding elements if each element recited in the claims is found in the accused device. For example, a pencil structurally infringing a patent claim would not become noninfringing when incorporated into a complex machine that limits or controls what the pencil can write.

*Suntiger, Inc. v. Blublocker Corp.*, 189 F.3d 1327, 1336, 51 USPQ2d 1811, 1816 (Fed.Cir.1999). Even with the additional element of paint, the accused floor panel still has an edge or trim that is formed by removing the edges of the decorative surface layer to reveal or uncover the "inner body portion." Accordingly, given that the addition of paint does not eliminate a limitation or inherent feature of the claim, Maxcess may not avoid infringement by merely adding paint to the border of its floor panel. *Compare id., with Insituform Techs., Inc. v. Cat Contracting, Inc.*, 99 F.3d 1098, 40 USPQ2d 1602 (Fed.Cir. 1996).

Moreover, we agree with Tate Access that the "integral contrasting border" limitation does not require that the inner body portion be "exposed to view." The claim merely requires that the edges of the decorative surface layer be removed "to expose" the inner body portion. That occurred. Once the edges of the surface layer of the accused panel were removed

to expose, *i.e.*, to uncover, the inner body portion, the claim was infringed. We therefore conclude that the "integral contrasting border" limitation was met by the accused floor panel, even though its border was later covered by paint.

Based on our conclusion that the "inner body portion" and "integral contrasting border" limitations in claims 1–7 are met by the accused floor panel, we likewise conclude that the corresponding "inner layer" and "border" limitations in claims 8–11 are also met by the accused floor panel. With respect to dependent claim 12, however, it is undisputed that the accused floor panel does not have an "inner layer" that is black. We therefore conclude that no reasonable juror could have found that Maxcess's floor panel infringed dependent claim 12 and accordingly reverse that holding.

In sum, because the disputed claim limitations are met by the accused floor panel, we conclude that substantial evidence supports the jury's finding of literal infringement of claims 1–11. However, because the accused floor panel does not have an "inner layer" that is black, no reasonable juror could find that Maxcess's floor panel infringed dependent claim 12. Based on these conclusions, we need not reach the parties' arguments with respect to infringement under the doctrine of equivalents.[6]

### D. Lost Profits

Maxcess argues that the district court erred in denying Maxcess's motion for JMOL because Tate Access failed to prove that it was entitled to lost profits. Maxcess contends that Tate Access failed to prove the absence of noninfringing alternatives and failed to prove that it would have captured all of Maxcess's infringing sales "but for" the infringement, especially given that the parties sell their respective products through exclusive dealerships.

---

6. With respect to claim 12, a claim with a limitation as clear and decisive as "black"

can hardly be infringed under the doctrine of equivalents by a product that is brown.

Tate Access responds that there was substantial evidence to support the jury's finding that Tate Access was entitled to lost profits because there were no acceptable noninfringing substitutes. Tate Access asserts that its own patented floor panel and Maxcess's Duratrim floor panel are the only two available floor panels that have self-formed recessed edges, and that all other floor panels have add-on trims and therefore are not acceptable substitutes.

To recover lost profits, a patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer. *See Rite–Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545, 35 USPQ2d 1065, 1069 (Fed.Cir.1995) (en banc). A useful, but non-exclusive, way for a patentee to prove entitlement to lost profits is provided by the four-factor *Panduit* test, which "requires that the patentee establish: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156, 197 USPQ 726, 730 (6th Cir. 1978)). "A showing under *Panduit* permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales, thus establishing a patentee's *prima facie* case with respect to 'but for' causation." *Id.*

We agree with Tate Access that substantial evidence supports the jury's finding that Tate Access was entitled to lost profits. Notwithstanding its assertion that there were noninfringing alternatives available, Maxcess does not dispute the fact that its Duratrim floor panel and Tate Access's patented floor panel were the

only two floor panels with recessed edges. Thus, for any customer specifically seeking a floor panel with recessed edges, there were no noninfringing substitutes for the claimed floor panel. Moreover, there was substantial evidence that other floor panels with add-on trims were not acceptable as substitutes for those customers. For example, the '491 patent itself explains the advantages of the claimed floor panel over floor panels with add-on trims. *See, e.g.,* '491 patent, col. 3, l. 61 to col. 4, l. 51. In fact, Maxcess's own product brochure indicates that applied or add-on trims are not acceptable for purchasers of the Duratrim floor panel. *See, e.g.,* J.A. at 1274. Given the absence of any acceptable noninfringing substitutes, there was "a reasonable probability that 'but for' the infringement, [Tate Access] would have made the sales that were made by [Maxcess]." *Rite–Hite*, 56 F.3d at 1545, 35 USPQ2d at 1069. We therefore conclude that there was substantial evidence to support the jury's finding that Tate Access was entitled to lost profits, and that the district court did not err in denying Maxcess's motion for JMOL on the issue of lost profits.

### E. Cross–Appeal

Tate Access argues that Maxcess willfully infringed and engaged in vexatious litigation conduct, and thus that the district court abused its discretion in denying both its motion to amend the judgment by increasing damages under 35 U.S.C. § 284 and its motion for attorney fees pursuant to 35 U.S.C. § 285.[7] Tate Access also argues that the district court abused its discretion in failing to grant its motion for a permanent injunction under 35 U.S.C. § 283 since it prevailed on infringement and there was no strong public policy against an injunction.[8] Maxcess responds

---

**7.** *See* 35 U.S.C. § 284 (1994) ("When the damages are not found by a jury, the court shall assess them. In either event the court may increase the damages up to three times the amount found or assessed."); *id.* § 285

("The court in exceptional cases may award reasonable attorney fees to the prevailing party.").

**8.** *See* 35 U.S.C. § 283 (1994) ("The several courts having jurisdiction of cases under this

that the district court did not abuse its discretion in refusing to enhance damages or award attorney fees because this was a "close" case, there was evidence that the '491 patent was invalid, Maxcess believed in good faith that its floor panel did not infringe, and Tate Access's allegations of litigation misconduct were unfounded. Maxcess further responds that if this court affirms the district court's judgment with respect to the jury verdict on infringement, Maxcess will not oppose the entry of a permanent injunction.

 Without reaching the merits of the parties' arguments relating to enhanced damages and attorney fees, we conclude that, in light of the jury's finding of willful infringement, the district court abused its discretion in refusing to increase damages or award attorney fees because it failed to articulate any reasons for refusing to make such awards. *See Jurgens v. CBK, Ltd.,* 80 F.3d 1566, 1573, 38 USPQ2d 1397, 1402 (Fed.Cir.1996) ("[S]ince the court gave no independent reasons for refusing to award attorneys fees, we also conclude that the court abused its discretion in refusing that award in light of the verdict."). While "a finding of willful infringement does not mandate that damages be increased or that attorneys fees be awarded," *id.,* after an express finding of willful infringement, "a trial court should provide reasons for not increasing a damages award or for not finding a case exceptional for the purpose of awarding attorneys fees," *id.* at 1572, 80 F.3d 1566, 38 USPQ2d at 1401. We therefore vacate the district court's denial of Tate Access's motions for enhanced damages and attorney fees, and remand for the district court to exercise its discretion over these issues in light of the facts and circumstances of this case. On remand, the district court is directed to consider whether Maxcess sought the opinion of counsel or otherwise exercised due care, and whether there was a reasonable basis for

concluding that the accused floor panel did not infringe the claims of the '491 patent.

Finally, based on our conclusion that the jury's finding of literal infringement of claims 1–11 was supported by substantial evidence, and in view of Maxcess's assertion that in such case it will not oppose the entry of a permanent injunction, we further conclude that the district court abused its discretion in failing to grant a permanent injunction. On remand, the district court is directed to grant such an injunction.

## CONCLUSION

The district court did not err in denying Maxcess's motion for JMOL of noninfringement of claims 1–11, because there was substantial evidence to support the jury's finding that Maxcess's Duratrim floor panel literally infringed those claims of the patent. However, because no reasonable juror could have found that Maxcess's floor panel infringed claim 12, we reverse the district court's denial of Maxcess's motion for JMOL on that claim. The district court did not err in denying Maxcess's motion for JMOL on the issue of lost profits because substantial evidence supported the jury's finding that Tate Access was entitled to such profits. As for the issues on cross-appeal, the district court abused its discretion in denying Tate Access's motion for a permanent injunction. Finally, with respect to Tate Access's motion for enhanced damages and attorney fees, the district court abused its discretion by failing to provide any reasoning in support of its denials. Accordingly, we

*AFFIRM–IN–PART, REVERSE–IN–PART, VACATE–IN–PART,* and *RE-MAND.*

title may grant injunctions in accordance with the principles of equity to prevent the viola-

tion of any right secured by patent, on such terms as the court deems reasonable.'').