**HOCKERSON–HALBERSTADT, INC.,**

v.

**NIKE, INC., et al.**

**No. CIV.A. 91–1720.**

United States District Court,
E.D. Louisiana.

Jan. 18, 2002.

See, also, 2001 WL 1104643.

Robert L. Hackett, Stephen Lewis Dunne, Law Offices of Robert L. Hackett, Morris Samuel Borenstein, Morris S. Borenstein, Attorney at Law, New Orleans, LA, Guy E. Matthews, William P. Jensen, Matthews & Associates, Houston, TX, James E. Uschold, James E. Uschold, PLC, New Orleans, LA, Donald Lee Nauman, Donald Lee Nauman, Attorney at Law, Santa Rosa, CA, Michael Douglas Carbo, Michael D. Carbo, PLC, New Orleans, LA, for plaintiff.

Gerald Edward Meunier, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans, LA, Rodger L. Tate, Banner, Birch, Washington, DC, Paul E. Krieger, Pravel, Hewitt, Kimball & Krieger, Houston, TX, Charles C. Garvey, Jr., Gregory Carlyle Smith, Seth Martin Nehrbass, Garvey, Smith, Nehrbass & Doody, LLC, Metairie, LA, Robert G. Krupka, Kirkland & Ellis, Chicago, IL, David K. S. Cornwell, Tracy-Gene Graveline Durkin, Sterne, Kessler, et al., Washington, DC, David Wolf, Wolf, Greenfield, et al., Boston, MA, Jack M. Weiss, Mark Benjamin Holton, Gibson, Dunn & Crutcher, LLP, New York City, Ruth Lynette Wylie, Seed & Berry, Seattle, WA, James Forrest Hinton, Jr., Berkowitz, Lefkovits, et al., Birmingham, AL, Lawrence B. Mandala, Baker & McKenzie, Dallas, TX, Philip Anthony Franco, Adams & Reese, New Orleans, LA, Lindsey Mitchell Ladouceur, Ladouceur & Ladouceur, LLC, New Orleans, LA, Richard C. Cooper, Terence J. Linn, Price, Heneveld, et al., Grand Rapids, MI, Stephen R. Doody, Garvey, Smith, Nehrbass & Doody, LLC, Metairie, LA, for defendants.

### *ORDER & REASONS*

FALLON, District Judge.

Pending before the Court are the post-trial motions of the parties on the issues of enhanced damages, attorney fees, costs, and pre-judgment interest. Also pending are Defendant's Motion for JNOV and Motion for Stay of Judgment. Plaintiff, Hockerson–Halberstadt, Inc. ("HHI") seeks an award of treble damages, prejudgment interest, and costs pursuant to 35 U.S.C. § 284. Plaintiff also asks the Court to designate this case "exceptional" and award reasonable attorney fees pursuant to 35 U.S.C. § 285. Defendant, Propet, Inc., opposes Plaintiff's motions and argues that discretionary awards of enhanced damages and attorney fees are not warranted by the facts of this case. Defendant also moves for a "judgment notwithstanding the verdict" pursuant to Federal Rule of Civil Procedure 50 and, in the alternative, a "stay of proceedings to enforce judgment" pursuant to Federal Rule of Civil Procedure 62. For reasons set forth below, the Court GRANTS Plaintiff's motion and awards the sum of $150,000.00 in enhanced damages. The Court FURTHER GRANTS Plaintiff's motion for attorney fees and awards attorney fees in the amount of $120,000.00 and costs. The Court FURTHER GRANTS Plaintiff's motion for prejudgment interest and awards prejudgment interest at the current prime rate of 4.75%,[1] to be calculated from October 11, 1995. The Court DENIES Defendant's motion for JNOV and FURTHER DENIES Defendant's motion for a stay of execution of judgment without bond.

## I. BACKGROUND

Plaintiff, HHI, owns the '895 patent, which relates to a "stabilized athletic shoe." This patent, originally issued on April 6, 1982, claims a running shoe that provides added stability, control, and shock absorption. The patented design includes a support band, secured to the upper rim

---

1. *See Money Rates,* WALL ST. J., Dec. 26, 2001, *available at* 2001 WL-WSJ 29681677.

of the midsole and the sides of the heel cup, which stabilizes the heel and resists flexing to the side, should the runner land off-center. *See Hockerson–Halberstadt, Inc. v. Converse, Inc.* 183 F.3d 1369, 1370–71 (Fed.Cir.1999).

In 1991, HHI filed suit against Nike, Inc., Reebok International, Ltd., Hyde Athletic Industries, Inc., L.A. Gear, Inc., Brooks Shoe Inc., and Kinney Shoe Corp. alleging infringement of the '895 patent. *Id.* At that time, Reebok requested reexamination of the patent from the United States Patent and Trademark Office. The Patent Office granted the request and issued a Reexamination Certificate on August 8, 1995. In 1996, HHI filed suit against additional shoe companies, including Converse and the Defendant, Propet. In May of 1998, this Court granted summary judgment in favor of Converse, finding that HHI impermissibly broadened the scope of its claim during reexamination. In July of 1999, the United States Federal Circuit Court of Appeals reversed, concluding that the reexamined claims did not encompass subject matter beyond the original claim. *Id.* at 1374–75.

HHI's suit against Propet was stayed pending the Converse appeal, and was eventually tried in September of 2001. After a three-day trial, the jury found that the '895 patent was valid and infringed and awarded HHI a reasonable royalty of $711, 248.75. In addition, the jury found that the Defendant's infringement was "willful." Accordingly, the issue of enhanced damages is before this Court.

HHI now argues that an award of treble damages is appropriate in this case, citing the factors set forth in *Read Corp. v. Portec, Inc.,* 970 F.2d 816 (Fed.Cir.1992), *abrogated in part on other grounds by Markman v. Westview Instruments,* 52 F.3d 967, 975 (Fed.Cir.1995) (en banc). First, HHI asserts that Propet routinely and "deliberately" "copied the designs" of many shoe companies, including several HHI licensees, such as Rockport. *See* Plaintiff's Post-trial Motions and Memorandum, at 4. Second, HHI contends that Propet investigated the scope of the '895 patent, but did not form, and had no basis for, a "good faith belief that the patent was invalid or not infringed." *See id.*

Next, HHI addresses, at length, the third *Read* factor, the Defendant's "behavior as a party to the litigation." According to HHI, Propet's conduct during the course of litigation was "less than cooperative and forthcoming." *See id.* at 5. HHI cites several examples to support this contention, including Propet's refusal to stipulate to similarity of shoe models, allegedly inaccurate recordkeeping, a delayed request for a *Markman* hearing, improper reliance on prior art, improper attempts to elicit expert testimony from a fact witness, irrelevant and prejudicial arguments relative to Propet's financial status and ability to pay damages, so-called "dump truck" discovery tactics, and an improper attempt to inject the defense of inequitable conduct. *See id.* at 5–7.

HHI also asserts that the Defendant's "size and financial condition" weigh in favor of an award of enhanced damages. According to the Plaintiff, Propet is a company in "excellent financial condition" with gross sales approaching $17 million dollars annually. *See* Plaintiff's Post-trial Motions and Memorandum, at 8. Addressing the "closeness of the case," HHI states flatly that "this was not a close case on validity, infringement, or damages" and emphasizes that the Defendant presented no expert testimony during trial. *See id.* at 9. HHI further notes that Propet's infringing conduct continued from notice of the existence of the '895 patent through the expiration of the patent and that "absolutely no remedial action was taken by Propet at any time." *See id.* at 9–10. The Plaintiff concludes by

noting that "evidence of apathy, disregard and deliberate indifference to HHI's rights is clear," and that Propet "actively attempted to conceal the scope of its misconduct." *See id.* at 10.

In reply, Defendant does not address the *Read* factors, but seeks to distinguish the facts of this case from those of other patent infringement cases in which enhanced damages have been awarded. First, Defendant argues that enhanced damages are not appropriate in this case because the Plaintiff, HHI, and the Defendant, Propet, are not "business competitors." According to Propet, because HHI is "not in the shoe business," HHI has not "incurred financial damage because of lost sales, or loss of market share, attributable to Propet's sales." *See* Defendant's Opposition to Plaintiff's Post-trial Memoranda, at 2. Propet argues that the fact that HHI "has a patent right but no underlying business" distinguishes this case from the typical patent infringement case in which the patent owner and the infringer are competing for a share of the same market. *See id.* at 4 n. 5.

Additionally, Propet argues that the "unusual" facts and procedural history of this case should preclude an award of enhanced damages. According to Propet, enhanced damages are not appropriate in this case because this Court previously invalidated the '895 patent, and because the United States Federal Circuit Court of Appeals, in *Converse,* limited the scope of the '895 patent to shoes bearing a "pyramid-shaped midsole." *See id.* at 6. Propet reurges many of the claim construction issues raised in its pretrial *Markman* brief, and again argues strenuously that under *Converse,* without a two-piece, pyramid-shaped sole, Propet's shoes do not infringe the '895 patent. Propet concludes that for these reasons, Propet had a "reasonable basis for believing that its shoes d[id] not infringe HHI's patent" and enhanced damages are not warranted. *See id.* at 8.

## II.  ANALYSIS

### A.  DAMAGES

■ 35 U.S.C. § 284 governs damage awards in patent infringement cases. According to the statute, "[u]pon finding for the claimant ... the court may increase the damages up to three times the amount found or assessed." *See* 35 U.S.C. § 284. While a determination of willful infringement allows for an award of enhanced damages, it does not mandate such an award. *See Read,* 970 F.2d at 826 (noting that "a finding of willful infringement does not mandate that damages be enhanced, much less mandate treble damages"); *see also Stryker Corp. v. Davol Incorp.,* 234 F.3d 1252, 1259 (Fed.Cir.2000) ("A verdict of willful infringement authorizes but does not mandate enhanced damages."); *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,* 166 F.Supp.2d 1008, 1040 (D.Del.2001) (denying enhanced damages after jury finding of willfulness). Moreover, a jury finding of willfulness does not automatically trigger treble damages. Rather, the decision to enhance damages and the degree of enhancement "remains firmly within the scope of the district court's reasoned discretion, informed by the totality of the circumstances." *See Odetics, Inc. v. Storage Tech. Corp.,* 185 F.3d 1259, 1274 (Fed.Cir.1999). Accordingly, a court's denial of enhanced damages is reviewed for abuse of discretion. *See id.*

The assessment of enhanced damages under 35 U.S.C. § 284 rests largely on two factors. First, the fact-finder must determine if the infringer is guilty of culpable conduct warranting enhanced damages. *See Jurgens v. CBK Ltd.,* 80 F.3d 1566, 1570 (Fed.Cir.1996). Next, a court must determine whether and to what extent to

increase the damage award, given the totality of the circumstances. *See id.* A finding of willful infringement "satisfies this culpability requirement and is ... sufficient to meet the first requirement to increase a compensatory damages award." *See id.* Upon a jury finding of willful infringement, a court must clearly articulate its independent reasons for failing to increase a damage award or award attorney fees. *See Tate Access Floors v. Maxcess Techs., Inc.,* 222 F.3d 958, 972 (Fed. Cir.2000).

Although the "paramount determination" in considering an award of enhanced damages is the egregiousness of the infringer's conduct in light of all facts and circumstances, courts must also consider both aggravating and mitigating circumstances in deciding whether to enhance damages. *See Read Corp. v. Portec, Inc.,* 970 F.2d 816, 826 (Fed.Cir.1992). A nonexhaustive list of factors has emerged to assist courts in making this determination. These so-called *"Read* factors" direct courts to consider: 1) whether the infringer deliberately copied the ideas or design of another; 2) whether the infringer, when he knew of the patent protection, investigated the scope of the patent and formed a good-faith belief that it was invalid or not infringed; 3) the infringer's behavior as a party to the litigation; 4) the defendant's size and financial condition; 5) the closeness of the case; 6) the duration of the defendant's misconduct; 7) any remedial action by the defendant; 8) the defendant's motivation for harm; and 9) whether the defendant attempted to conceal its misconduct. *See id.* at 827.

The remedy of enhanced damages in patent infringement cases serves a dual function. First, increased damages serve a primary goal of punishment and deterrence. *See SRI Int'l, Inc. v. Advanced Tech. Labs., Inc.,* 127 F.3d 1462, 1468 (Fed.Cir.1997); *see also Smith Corona*

*Corp. v. Pelikan, Inc.,* 784 F.Supp. 452, 480 n. 22 (M.D.Tenn.1992) (explaining that "the proper focus for a district court on the issue of increased damages is whether the goal of deterring future offenders is served or frustrated by such an award"). Second, enhanced damages have the "secondary benefit of quantifying the equities as between patentee and infringer." *See SRI,* 127 F.3d at 1468. Courts have also recognized that enhanced damages serve the overarching goal of patent law, "[t]o promote the Progress of Science and useful Arts, by securing ... to Authors and Inventors the exclusive Right to their ... discoveries." *See* U.S. CONST. art. I, § 8, cl. 8; *see also Century Wrecker Corp. v. E.R. Buske Mfg. Co.,* 913 F.Supp. 1256, 1291 (N.D.Iowa 1996) (noting the "importance of patent privileges and protections to fostering invention and entrepreneurship" and concluding that enhanced damages "could be uniquely effective in preventing the stifling effect of infringement on the spirit of invention").

In light of these goals, and after careful consideration of each of the *Read* factors, the Court finds that enhanced damages are appropriate in this case, but not to the extent of treble the award. Balancing the aggravating and mitigating circumstances and taking into consideration the Defendant's size and financial condition, the duration of the Defendant's misconduct, and the motivation for harm, the Court concludes that an award of $150,000.00 is appropriate for enhanced damages.

**B. Attorney Fees**

■ Plaintiff also seeks a determination that this case is "exceptional" and moves for an award of attorney fees. HHI requests this award "for the same reasons set forth in support of treble damages" and argues that "if Propet's activities outlined in the treble damages section do not

show bad faith, they clearly show an absence of good faith." *See* Plaintiff's Post-trial Memorandum, at 11. Defendant, Propet, similarly addresses attorney fees as one component of "enhanced damages" and presumably seeks denial of attorney fees for the same reasons offered in opposition to treble damages.

35 U.S.C. § 285 authorizes the award of attorney fees in patent infringement cases. According to the statute, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." *See* 35 U.S.C. § 285. Generally, attorney fees under section 285 may be "justified by any valid basis for awarding increased damages under section 284." *See Jurgens,* 80 F.3d at 1573 n. 4; *see also Virginia Panel Corp. v. MAC Panel Co.,* 133 F.3d 860, 867 (Fed.Cir.1997) (citing *Read* factors "most notably the closeness of the case" among reasons to "justify the court's decision not to award attorney fees"). An award of enhanced damages under section 284, however, does not mandate an award of attorney fees. *See id.* Likewise, a finding of willfulness does not necessitate an award of attorney fees. *See National Presto Indus. v. The West Bend Co.,* 76 F.3d 1185, 1197 (Fed.Cir.1996); *see also Honeywell,* 166 F.Supp.2d at 1041 (declining to find case "exceptional" and award attorney fees after jury finding of willfulness). While such an award "often follows a finding of willful infringement ... the award of attorney fees is not automatic, even for the extraordinary case." *See National Presto,* 76 F.3d at 1197. Whether a case is "exceptional" is a question of fact reviewed for clear error, while a decision to award attorney fees is discretionary, and is reviewed for abuse of discretion. *See Amsted Indus. Incorp. v. Buckeye Steel Castings Co.,* 24 F.3d 178, 184 (Fed.Cir.1994).

In this case, the willfulness of Propet's infringement makes the case "exceptional" and warrants an award of attorney fees under section 285. Of particular relevance is Propet's failure, upon notice of the '895 patent, to investigate and "form a good faith belief" that the patent was either invalid or not infringed. Propet has failed to demonstrate that it relied on "advice of competent counsel" or "otherwise acquired a basis for a *bona fide* belief" that the '895 patent was invalid. *See Kloster Speedsteel AB v. Crucible, Inc.,* 793 F.2d 1565, 1581 (Fed.Cir.1986). For these reasons, the Court finds this case "exceptional" and GRANTS Plaintiff's motion for attorney fees in the amount of $120,000.00.

## C. Prejudgment Interest

HHI also seeks an award of prejudgment interest on the jury's award of "reasonable royalty" damages. According to HHI, interest should be awarded "from the date royalties would have been paid pursuant to a license executed prior to the commencement of infringement." *See* Plaintiff's Post-trial Memorandum, at 12. HHI further requests that royalties and interest be calculated on a quarterly basis, and that "royalties be considered owed and interest calculated as of 30 days following the end of each quarter." *See id.* Plaintiff asserts that the interest rate applicable is the rate of interest the Defendant actually paid to private lenders for loans during the period of infringement. HHI argues that "the court does not need to resort to the prime rate because the record shows the rates of interest Propet actually paid on loans made during the years in question" and proposes that interest be calculated at the prime rate plus 1.75 % for payments due prior to September 30, 1998, and at the prime rate plus 1.375% for payments due on or after September 30, 1998. *See id.* at 15.

In reply, the Defendant, Propet, addresses the issue of prejudgment interest only in a footnote, and only to argue that

the Plaintiff's proposed analysis is "complicated" and "should have been presented at trial." *See* Defendant's Opposition, at 3 n. 2. Propet has not proposed an alternative method of calculating interest or offered grounds for the denial of prejudgment interest in this case.

In patent infringement cases, prejudgment interest "should ordinarily be awarded absent some justification for withholding such an award." *See General Motors Corp. v. Devex Corp.,* 461 U.S. 648, 657, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983). Unlike enhanced damages and attorney fees, an award of prejudgment interest "has no punitive, but only compensatory, purposes" and serves to "compensate[ ] the patent owner for the use of its money between the date of injury and the date of judgment." *See Oiness v. Walgreen Co.,* 88 F.3d 1025, 1033 (Fed.Cir.1996). The determination of the appropriate interest rate is "within the sound discretion of the district court." *See Kaufman Co. v. Lantech, Inc.,* 926 F.2d 1136, 1144 (Fed.Cir. 1991); *see also* 7 Donald S. Chisum, *Chisum on Patents* § 20.03[4][a][v] (explaining that "the district court has discretion to fix the rate at the statutory rate or at a higher rate" and noting that courts have selected a variety of interest rates including the prime rate, the prime rate plus a percentage, the U.S. Treasury bill rate, and others). In this case, the Court will apply the prime rate presently in effect, 4.75%. This amount will apply "from the date royalties would have been paid pursuant to a license," calculated by the Plaintiff as October 11, 1995, until payment.

### D. Defendant's Motion for JNOV

Defendant, Propet, seeks a "judgment notwithstanding the verdict" pursuant to Federal Rule of Civil Procedure 50.[2] According to the Defendant, a judgment of "noninfringement" is warranted because "no Propet shoe can be deemed to have infringed HHI's patent." *See* Defendant's Motion for JNOV, at 2. Propet argues that, according to the Federal Circuit's *Converse* decision, HHI's patent does not encompass Propet's shoes *unless* the shoes include a well-defined, pyramid-shaped midsole. *See id.* at 3. Propet asserts that this crucial pyramid must "be seen" and cannot be " 'created' by drawing imaginary lines though a single-piece shoe sole." *See id.* HHI opposes the motion, arguing both that the motion is premature, because no verdict has been entered,[3] and that "the argument was rejected by the trial court before trial and again on Propet's initial

**2.** Plaintiff points out that "[w]hat used to be called motions for directed verdicts and for JNOV are now called motions for judgment as a matter of law (JMOL)." *See* Objection to Propet's Motion for JNOV, at 1. Although styled a "motion for judgment notwithstanding the verdict," the Defendant's motion is properly termed a "motion for judgment as a matter of law." The advisory committee notes to the rule explain, however, that "the party's error is merely formal" and "the motion should be treated as a motion for judgment as a matter of law in accordance with this rule." *See* Fed.R.Civ.P. 50 advisory committee's notes.

**3.** Plaintiff's prematurity argument is without merit. Rule 50 prescribes an outer limit for filing a renewed motion after trial, providing that "[t]he movant may renew its request for judgment as a matter of law *no later than 10 days after entry of judgment.*" *See* Fed. R.Civ.P. 50(b) (emphasis added). The rule does not expressly require that a motion for judgment as a matter of law be filed after entry of a verdict. *See Price v. Arkansas College,* 683 F.Supp. 712, 713 (E.D.Ark.1988) (finding motion for judgment notwithstanding the verdict timely although submitted prior to entry of judgment); *Trahan v. Pennzoil Co.,* 1990 WL 109287, at *3 (E.D.La. July 25, 1990) (same). *Cf. Greater Houston Chapter of the Am. Civil Liberties Union v. Eckels,* 755 F.2d 426, 427 (5th Cir.1985) (concluding that Rule 59 motion for new trial filed prior to formal entry of judgment was "timely and proper").

motion for JMOL." *See* Plaintiff's Objection, or in the Alternative, Opposition to Propet's Motion for JNOV and for Stay of Execution of Judgment, at 1–2.

Federal Rule of Civil Procedure 50(a) provides that "[i]f ... a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue ... the court may ... grant a motion for judgment as a matter of law against that party." *See* Fed.R.Civ.P. 50(a). Rule 50(b) further provides for the "renewal" of a motion for judgment after trial, if the court does not grant the motion at the close of all of the evidence. *See id.* If such a motion is renewed after a verdict has been returned, the Court may either allow the judgment to stand, order a new trial, or direct entry of judgment as a matter of law. *See id.*

■ "A party is entitled to judgment as a matter of law only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position." *See Hampton v. Dillard Dep't Stores, Inc.,* 247 F.3d 1091, 1099 (10th Cir.2001). A judgment as a matter of law is properly granted only "where the facts and inferences indicate a particular outcome so strenuously that reasonable minds could not disagree." *See Aguillard v. McGowen,* 207 F.3d 226, 228–29 (5th Cir.2000). When ruling on a Rule 50 motion for judgment as a matter of law, a court should consider the evidence in the light most favorable to the non-moving party. *See id.*

■ In this case, the Defendant seeks "entry of judgment of noninfringement in Propet's favor" because Propet's shoes allegedly lack a pyramid-shaped midsole. *See* Defendant's Motion for JNOV, at 4. This claim construction issue was thoroughly briefed by the parties and addressed by the Court prior to trial. *See* Defendant Propet's First Trial Brief, at 4

("HHI's patent requires two separately defined pieces-one being the pyramid-shaped midsole and the other being a separate heel band. If a shoe sole is made of a single piece of solid material, then HHI's patent is not infringed."); *see also* Order and Reasons, September 20, 2001, at 5 ("While the patent clearly requires a pyramid-shaped midsole, this shape need not be visible, if the pieces are merged."). Propet's motion for judgment as a matter of law is not based on the sufficiency of the evidence presented at trial or on the jury's verdict, but on the Court's *Markman* decision, issued prior to trial, construing the claims of the '895 patent. The Court declines to reconsider those issues at this time. Accordingly, Defendant's motion for JNOV is DENIED.

### E. Defendant's Motion for Stay of Judgment

■ Propet alternatively moves for a "stay of proceedings to enforce judgment" pursuant to Federal Rule of Civil Procedure 62. Propet argues that "HHI is a shell company that has no tangible assets," and if Propet "obtains reversal of the judgment on appeal ... it is unlikely that it can obtain a refund of the judgment from HHI." *See* Defendant's Motion for JNOV and Alternatively, Motion for Stay of Judgment, at 5. Propet further asserts that because the cost of a bond in this case will be prohibitively expensive, an automatic stay of execution upon appeal will not be possible. *See id.* at 5 ("Propet has also been informed that no bonding company will post a bond, unless the total amount of the bond is secured by an irrevocable line of credit."). Propet concludes by cautioning that "HHI will stand a better chance of collecting, and Propet will stand a better chance of satisfying the judgment, if Propet is allowed to continue its normal business operations." *See id.* at 5–6.

Federal Rule of Civil Procedure 62(d) governs stays pending appeals. According to the rule, "[w]hen an appeal is taken, the appellant by giving a supersedeas bond may obtain a stay." *See* Fed.R.Civ.P. 62(b). The Defendant has offered no compelling evidence to support a departure from the rule in this case. Accordingly, Defendant's motion for stay is DENIED. Defendant may obtain a stay upon appeal by complying with the bond requirements set forth in Rule 62.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for enhanced damages is GRANTED. Plaintiff is awarded $150,000.00 in additional damages. Plaintiff's motion for attorney fees is GRANTED. Plaintiff is awarded the sum of $120,000.00 in attorney fees. Plaintiff's motion for prejudgment interest is GRANTED. Prejudgment interest, at the current prime rate of 4.75 %, shall be applied to the jury award of $711,248.75, and shall be calculated from October 11, 1995 until payment. Defendant's motion for JNOV is DENIED. Defendant's motion for stay of execution without bond is DENIED.