IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-20039
_____


JASON AGUILLARD; ET AL.,

                                        Plaintiffs,

JASON AGUILLARD; O.L. HARRISON; WILLIAM A.
HARRISON; SANDRA HARRISON; GLORIA HAMILTON,

                                        Plaintiffs-Appellees,

                        v.

JOSEPH K. MCGOWEN; ET AL.,

                                        Defendants,

JOSEPH K. MCGOWEN; HARRIS COUNTY, TEXAS,

                                        Defendants-Appellants.

**************

O. L. HARRISON, Surviving Parent of Susan Harrison
White, Deceased; WILLIAM A. HARRISON, Surviving
Parent of Susan Harrison White, Deceased; GLORIA
HAMILTON, Individually and as next friend of Jason
Aguillard; SANDRA HARRISON, Individually and on
behalf of Estate of Susan Harrison White, Deceased,

                                        Plaintiffs-Appellees,

                        v.

JOSEPH K. MCGOWEN; ET AL.,

                                        Defendants,

JOSEPH K. MCGOWEN; HARRIS COUNTY, TEXAS,

                                        Defendants-Appellants.
_____

Appeals from the United States District Court
for the Southern District of Texas
_____
March 15, 2000

Before BARKSDALE, BENAVIDES and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellants Joseph K. McGowen ("McGowen") and Harris County, Texas ("the County") appeal from a jury verdict holding them liable for the wrongful death of Susan Harrison White ("White") pursuant to 42 U.S.C. § 1983. The district court, giving preclusive effect to McGowen's Texas state criminal conviction for murder, forbade McGowen to present evidence on the issue of excessive force. Because the state court of appeals reversed McGowen's criminal conviction on appeal, we vacate and remand for a new trial on the merits. We further determine, pursuant to our sufficiency of the evidence analysis, that insufficient evidence supports the County's liability, and we therefore reverse and dismiss the County from the suit. Finally, we hold that White's sisters, appellees Sandra Harrison ("Harrison") and Gloria Hamilton ("Hamilton") lack standing in their individual capacities, and we thus dismiss them from the suit as individual plaintiffs.

## I. Factual and Procedural Background

McGowen began working as a deputy for the Harris County Sheriff's Department on October 4, 1990. Sometime thereafter, the Sheriff's Department assigned him to patrol the Olde Oakes subdivision, where White, and her son, appellee Jason Aguillard ("Aguillard"), lived. Though the details are unclear, McGowen engaged in conduct during his patrol that White characterized as sexual harassment.

To assess her options in dealing with McGowen, White and a friend, Ray Valentine ("Valentine"), had dinner with another Harris County Deputy Sheriff, Captain C.J. Harper ("Harper"). Harper claims that he advised her that she could complain to the Sheriff's office; if that yielded no results, she could resort to the Internal Affairs Division, the District Attorney or the FBI. White did not register any formal complaint about McGowen.

Several months later, on August 22, 1992, White and Valentine were having dinner at a restaurant when a friend of Aguillard's approached White and told her that McGowen was arresting Aguillard. White and Valentine immediately went to the site of the arrest and attempted to dissuade McGowen from arresting Aguillard. When their pleas fell on deaf ears, White yelled, "I'm going to get you, [McGowen,] you son of a bitch."

McGowen had arrested Aguillard for possession of a stolen credit card and selling a stolen gun to an undercover officer. Instrumental in Aguillard's capture was Michael Schaeffer ("Schaeffer"), a childhood friend of Aguillard's, who apparently agreed to inform on Aguillard after McGowen pulled him over multiple times for traffic violations. McGowen had also arrested Schaeffer, but released him immediately.

Knowing of Schaeffer's arrest and prompt release, White called both Schaeffer's aunt and mother, inquiring about his whereabouts. White told Schaeffer's aunt, "I think Michael is an informant and in Houston an informant is a dead person." White repeated a similar statement to Schaeffer's mother. Though

3

neither Schaeffer nor his mother took these statements seriously, Schaeffer reported them to McGowen, who replied that White was a "threat" and "needed" to go to jail.

Embellishing White's statements to the point of fabrication, McGowen obtained a warrant to arrest White for felony retaliation. McGowen set out to execute this warrant on August 24, 1992, at around midnight. McGowen and two other deputies woke White, who refused to open her front door. While McGowen sought permission to enter the house forcibly, White called 911. Having obtained the necessary approval, McGowen and the other deputies broke down the back door. McGowen ran into White's bedroom, where, he claims, she was sitting on the bed, pointing a gun at him. McGowen shot her three times, killing her.

McGowen was tried and convicted of murder; the trial court sentenced him to 15 years imprisonment.

Aguillard, White's parents, Hamilton and Harrison (individually and as next friend of Aguillard and White's estate respectively) brought a wrongful death action on March 9, 1993. During the trial, held from September 11-25, 1996, the district court sua sponte raised the issue of collateral estoppel, concluding that McGowen's criminal conviction was a final judgment which precluded McGowen from relitigating the issue of excessive force. The jury returned a verdict in favor of Aguillard in an amount exceeding $4 million.

McGowen and the County timely filed their appeal.

## II.    Standards of Review

We review a district court's decision to apply collateral estoppel for an abuse of discretion.  See Winters v. Diamond Shamrock Chem. Co., 149 F.3d 387, 391 (5th Cir. 1998).

We apply de novo review to a district court's denial of a motion for judgment as a matter of law.  See Rutherford v. Harris County, Texas, 197 F.3d 173, 178 (5th Cir. 1999).  "In ruling on a rule 50 motion based upon sufficiency of the evidence, we 'consider all of the evidence–not just that evidence which supports the non-mover's case–but in the light and with all reasonable inferences most favorable to the party opposed to the motion.'" Information Communication Corp. v. Unisys Corp., 181 F.3d 629, 633 (5th Cir. 1999) (quoting Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc)).  The district court properly grants a Rule 50 motion for judgment as a matter of law only where the facts and inferences indicate a particular outcome so strenuously that reasonable minds could not disagree.  See Rutherford, 197 F.3d at 179.

## III.    Collateral Estoppel

McGowen and the County argue that, because the 14th Court of Appeals, the state court reviewing McGowen's murder conviction, reversed it, the conviction is not a "final judgment" sufficient to exert a preclusive effect.  Therefore, they claim, the district court denied McGowen a fair trial by barring his defense, and they urge us therefore to vacate and remand.

Aguillard retorts that the 14th Court of Appeals reversed

5

McGowen's conviction for procedural reasons and specifically found that the evidence supported the verdict. A verdict reversed on a "technicality" for which sufficient evidence exists, Aguillard argues, should retain its preclusive impact.

We do not agree with Aguillard's argument that the verdict in the criminal case retains its preclusive effect. The 14th Court of Appeals undeniably reversed McGowen's conviction,[1] which unquestionably constituted the final judgment on which the lower court based its determination of collateral estoppel. A conviction overturned on appeal cannot constitute a final judgment for purposes of collateral estoppel. See J.J. Gregory Gourmet Servs., Inc. v. Antone's Import Co., 927 S.W.2d 31, 34 (Tex. App.–Houston 1995, no writ) ("[W]hen the appellate court reverses [a] judgment, the finality necessary for claim or issue preclusion is eliminated."); Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc., 128 F.3d 872, 876 n.2 (5th Cir. 1997).[2]

Aguillard's argument that a reversed conviction still exerts

---

[1] The 14th Court of Appeals twice reversed McGowen's conviction. The first reversal occurred on April 10, 1997. The Texas Court of Criminal Appeals, however, vacated that judgment on October 28, 1998 and remanded to the 14th Court of Appeals, which again reversed McGowen's conviction on February 3, 2000.
It is anticipated that the State of Texas will seek discretionary review of the 14th Court of Appeals's decision with the Texas Court of Criminal Appeals.

[2] Even if the State were now to appeal the February 3, 2000 reversal of McGowen's conviction, during the pendency of the appeal, the reversed conviction cannot exert preclusive effect. See Lulirama, 128 F.3d at 876 n.2 ("The fact that an appeal is pending in a higher appellate court does not restore the preclusive effects of the reversed judgment." (quoting 18 Charles Alan Wright, et al., Federal Practice and Procedure § 4432, 302 (1981)).
For this reason, on February 4, 1998, the date on which the panel heard oral argument in this matter, McGowen's conviction exerted no preclusive effect–despite the pendency of its appeal before the Texas Court of Criminal Appeals–because the 14th Court of Appeals had already reversed it.

a preclusive effect is simply incorrect, based, as it is, on a misreading of Scurlock Oil Co. v. Smithwick, 724 S.W.2d 1, 6 (Tex. 1986), which holds only that a judgment retains its preclusive impact while on appeal. See id. ("[W]e . . . hold that a judgment is final for purposes of issue and claim preclusion 'despite the taking of an appeal unless what is called an appeal actually consists of a trial de novo.'" (quoting Restatement (Second) of Judgments § 13 cmt. f)). Scurlock does not involve a situation in which the judgment given preclusive effect has been reversed on appeal, as does the present circumstance. Indeed, Scurlock even states that "[a] judgment in a second case based on the preclusive effects of a prior judgment should not stand if the judgment is reversed." Id. We thus hold that Aguillard's arguments in favor of granting preclusive effect to McGowen's criminal conviction for murder are wholly without merit.

Because the practical import of the lower court's application of collateral estoppel was to deny McGowen the opportunity to present a defense to the complaint, we see no viable course of action but to vacate and remand for a new trial on the merits. Without a valid determination of the excessive force claim, neither the judgment against McGowen nor the County can be sustained.

## IV.    Sufficiency of the Evidence

The County argues that the evidence is not sufficient to support a finding that it was deliberately indifferent to White's

right to be free from excessive force when it hired McGowen without discovering confidential information located in his file with the Houston Police Department, or without following up on the leads suggested by his polygraph test.

Aguillard naturally insists that the evidence is to the contrary.

Board of County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397 (1997) governs our inquiry into the sufficiency of the evidence. "Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the [hiring] decision . . . would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute 'deliberate indifference.'" Id. at 411. Any finding of culpability "must depend on a finding that this officer was likely to inflict the particular injury suffered by the plaintiff. The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong." Id. at 412.

The specific facts involved in Bryan County are extremely instructive. There, Reserve Deputy Stacy Burns ("Burns") stood convicted of using excessive force when he wrested a woman from a car, badly damaging her knees in the process. Burns, who was the great-nephew of Sheriff Moore, Bryan County's Sheriff and policy-maker, had a criminal record that included arrests for driving while intoxicated, driving with a suspended license, resisting

8

arrest, public drunkenness, and a conviction for assault and battery. Looking at this record, the Supreme Court held that Sheriff Moore's failure to examine Burns's criminal record did not "reflect[] a conscious disregard for a high risk that Burns would use excessive force in violation of respondent's federally protected right." Id. at 415-16.

Here, the record is far less suggestive of McGowen committing homicide than the record in Bryan County was of Burns committing battery. The record shows that McGowen threatened the mother of a juvenile with arrest, that he meddled in this mother's supervision of the child while he was off duty, and that the mother ultimately hired an attorney and threatened to obtain a restraining order against him. Colleagues at the Houston Police Department reported that McGowen wanted to "ride where the women were," and a female colleague stated that she did not want to ride with him under any circumstances. The record also discloses a report that in March 1990, McGowen assaulted and pistol-whipped a teenage boy who was driving his car around McGowen's apartment complex. Significantly, McGowen was neither arrested for nor convicted of the alleged assault. But while all of this may indicate that McGowen was "an extremely poor candidate" for the County's police force, id. at 414, the record shows not one shred of solid evidence foreshadowing McGowen's tragic killing of White. McGowen had never been formally disciplined, and his informal discipline record included only the infractions of using the police radio for broadcasting personal

9

messages and refusing to convey information to one party in a vehicular accident. McGowen had never wrongfully shot anyone before, nor did his record reveal him to be likely to use excessive force in general or possess a trigger-happy nature in particular. Certainly, the evidence of deliberate indifference in this case falls short of the quantum and quality of evidence presented in <u>Bryan County</u>, which the Supreme Court determined to be insufficient. In short, even when viewing the evidence, as we must, in the light most favorable to Aguillard, the record is bereft of evidence sufficient to impose liability on the County for wrongfully hiring McGowen. While the County may have been negligent in its employment decision, the magnitude of its error does not reach constitutional cognizance. We therefore hold that the district court erred in denying the County's Rule 50 motion for judgment as a matter of law, and we dismiss the County from this case.

## V.    Remaining Issues

Because our rulings on the collateral estoppel and Rule 50 issues constrain us to vacate and remand and dismiss the County, we need not address all of the remaining issues the parties raise, save with respect to the following: the question of whether White's sisters have standing in their individual capacities to bring a wrongful death suit.

McGowen and the County assert that White's sisters, Harrison and Hamilton, lack standing to bring this suit. Harrison and Hamilton respond by asking this court to acknowledge their right

10

to bring this suit.

Pursuant to 42 U.S.C. § 1988, we must look to the state wrongful death statute to determine who has standing to bring a wrongful death claim under § 1983.  The Texas Wrongful Death and Survival Statutes, Tex. Civ. Prac. & Rem. Code §§ 71.004 and 71.021, set forth the parties who can bring suit.  The Estate of Susan White ("the Estate") has standing pursuant to the Survival Statute, § 71.021, and Harrison, as White's heir and the legal representative of the Estate, has standing to prosecute the action.  See Garcia v. Caremark, Inc., 921 S.W.2d 417, 421 (Tex. App.–Corpus Christi 1996, reh'g overruled); Handley v. City of Seagoville, Texas, 798 F. Supp. 1267, 1270 (N.D. Tex. 1992).  Moreover, Hamilton, as an heir and interested party in the suit, may act as next friend for Aguillard.  See International & G.N. Ry. Co. v. Kuehn, 8 S.W. 484, 485-86 (Tex. 1888).

Thus, the controversy focuses on whether Harrison and Hamilton have standing in their individual capacities.  Neither Harrison nor Hamilton can cite any law from this Circuit supporting their bid for standing.  As siblings are, based on the plain language of the statutes, plainly not within the scope of the Texas Wrongful Death and Survivor Statutes, we decline to permit Harrison and Hamilton to bring this action in their individual capacities.  Upon retrial, then, Harrison and Hamilton must be dismissed as individual parties.

### VI.    Conclusion

We hold that a conviction reversed on appeal cannot function

11

as a final judgment supporting the application of collateral estoppel.  We therefore vacate and remand for a full trial on the merits.

We further hold that the evidence is insufficient to impose liability upon the County, and that the district court erred in refusing the County's motion for judgment as a matter of law.  We therefore reverse and dismiss the County from the suit.

Finally, we hold that Harrison and Hamilton lack standing in their individual capacities.  The district court erred in denying the County's motion to dismiss them as individual parties, and we therefore dismiss them from the suit in their individual capacities.

VACATED, REVERSED and REMANDED.