Donna WHITING, Plaintiff,

v.

TUNICA COUNTY, et al., Defendants.

No. 2:02CV136–P–B.

United States District Court,
N.D. Mississippi,
Delta Division.

July 19, 2002.

Edward Peacock Connell, Jr., Merkel & Cocke, Clarksdale, MS, Nathan J. McMullen, Clarksdale, MS, for Plaintiff.

Holly Stubblefield Mathews, James Arden Barnett, Jr., John Samuel Hill, Mitchell, McNutt & Sams, Oxford, MS, for Defendants.

## MEMORANDUM OPINION

PEPPER, District Judge.

 This cause is before the Court on the Defendant's Motion to Dismiss and for Qualified Immunity.[1] The Court, having

---

1. As to the issue of qualified immunity, although not specified by the defendants, the Court construes the motion as one for summary judgment pursuant to Fed.R.Civ.P. 56 as the materials submitted by the parties outside the pleadings have not been excluded. *See* FedR.Civ.P. 12(b) ("If, on a motion asserting the defense numbered (6) to dismiss for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment ..."). On this note, the Court points out that a motion to dismiss under Rule 12 is not the preferred vehicle for resolving the qualified immunity defense. *See Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir.2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal"). In this circuit, the preferred method is for the district court, at its discretion, to require a reply under Fed.R.Civ.P. 7(a) to an answer which raises qualified immunity as an affirmative defense. *See Schultea v. Wood*, 47 F.3d 1427, 1433–34 (5th Cir.1995) (en banc). Following the reply, the defendant can present the issue to the Court as a motion for summary judgment or a motion for judgment on the pleadings under Fed.R.Civ.P. 12(c). Although the Court did not require a reply from the plaintiff under Rule 7, the Court finds that the plaintiff has provided materials

considered the motion, the responses thereto, and the briefs and authorities cited, is prepared to rule. The Court finds as follows, to-wit:

### FACTUAL BACKGROUND

The plaintiff, Donna Whiting, filed this action pursuant to 42 U.S.C. § 1983 alleging various theories of liability against Tunica County, Mississippi, Tunica County Sheriff Jerry Ellington, individually and in his official capacity, Deputy Sheriff Brenda Johnson, individually and in her official capacity, and the Tunica County Sheriff's Department. The action arises out of the treatment Whiting allegedly received by Johnson in connection with her arrest and transport following an automobile accident in the Fall of 2000.

On October 26, 2000, Donna Whiting was involved in a motor vehicle collision. Tunica County Deputy Sheriff Brenda Johnson arrived on the scene of the collision as the investigating officer. During the course of her investigation, the plaintiff alleges that a heated argument ensued between Johnson and Whiting. The argument, according to the plaintiff, finally caused Johnson to believe that proper respect was not being shown for her authority. Subsequently, Johnson arrested Whiting for driving under the influence. After handcuffing her, Whiting alleges that Johnson "verbally threatened the safety and welfare of the plaintiff placing her in imminent fear for her well-being." Whiting also contends that Johnson recklessly shoved the plaintiff into the backseat of the police cruiser causing her injury. Finally, Whiting claims that, as she was being transported in the police car to jail, Johnson continued to verbally threaten her with physical harm and intentionally drove in such a manner that Whiting was tossed about the rear passenger compartment causing her "serious bodily injury."

Based on these events, Whiting advances a litany of claims against the defendants including violations of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments. Whiting also alleges a failure to supervise and train theory against Sheriff Ellington and seeks liability against him for his decision to hire Johnson. Additionally, Whiting asserts several state law claims. The defendants now seek qualified immunity for Sheriff Ellington and dismissal of various claims against all parties.

### LEGAL ANALYSIS

I. Summary Judgement Based on Qualified Immunity

#### A.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when, after viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-moving party, a reasonable jury could return a verdict for the non-movant. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). On the other hand, if a rational trier could not find for the non-moving party based on the evidence presented, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Ra-*

---

in her response to the motion sufficient to satisfy *Schultea.*

The Court will construe the motion as to issues other than qualified immunity as one pursuant to Fed.R.Civ.P. 12(b)(6).

*dio Corp.*, 475 U.S. 574, 584–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Finally, it should be noted that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

### B.

■■■■ Qualified immunity is a doctrine that operates to shield government officials, acting within the scope of their employment, from individual liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986). Qualified immunity is more than a mere defense to liability—if a defendant is entitled to it, he is immune from suit altogether. *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). In other words, qualified immunity operates as an entitlement of an official to be free from, not just liability, but the burdens of litigation in general, including broad-reaching discovery. As a result, a valid defense based on it must be recognized at the earliest possibly stage of the proceeding. *See Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).

■■■ For purposes of a summary judgment motion within a qualified immunity context, the burden of proof shifts to the plaintiff.

The defendant must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.

*Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir.1992) (citations omitted). *See also*, *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir.1997) ("We do not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden on plaintiffs").

■■■■ A two-step sequential inquiry is applied to evaluate whether a particular defendant is entitled to qualified immunity. First, it must be decided whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v. Gilley*, 500 U.S. 226, 231, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). To be "clearly established," the contours of the right must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987).

■■■■ If the first prong is satisfied, it must next be determined whether the conduct of the official was objectively reasonable in light of clearly established law. *Rankin v. Klevenhagen*, 5 F.3d 103 (5th Cir.1993). For qualified immunity purposes, a defendant's acts will be held to be objectively reasonable unless it can be said that all reasonable officials in the defendant's circumstances, which include facts known to the defendant, would have then realized that the defendant's conduct violated the Constitution or federal statute. *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 457 (5th Cir.2001) (other citations omitted). Accordingly, qualified immunity turns only on the objective reasonableness of a particular official's actions. The defendant's subjective state of mind is irrelevant on the question of whether he is entitled to qualified immunity. *Anderson*

*v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). At bottom, this means that "even law enforcement officials who reasonably but mistakenly commit a constitutional violation are entitled to immunity." *Glenn v. City of Tyler,* 242 F.3d 307, 312 (5th Cir.2001).

### C.

**1. Failure to Train or Supervise**

■ The plaintiff alleges that Sheriff Ellington is liable for failure to supervise and train his deputies, namely Brenda Johnson. When analyzing qualified immunity in such a context, the Court is mindful of the interplay between the subordinate's actions and supervisory liability. The Fifth Circuit has directed that courts faced with such a scenario first examine the conduct of the subordinate's action to see if the first prong is satisfied. Next, it must also be demonstrated that the theory by which the plaintiff seeks to hold Sheriff Ellington liable was clearly established at the relevant time. In other words, the "clearly established" prong becomes a bifurcated analysis in which one branch probes the underlying violation and the second assesses potential supervisory liability. *See Doe v. Taylor Independent School Dist.,* 15 F.3d 443, 454 (5th Cir. 1994). *See also, Poe v. Leonard,* 282 F.3d 123, 134 (2nd Cir.2002); *Camilo–Robles v. Hoyos,* 151 F.3d 1, 6 (1st Cir.1998); *Shaw v. Stroud,* 13 F.3d 791, 801 (4th Cir.1994). Finally, if those two requirements are met, it must be ascertained whether the Sheriff's actions were objectively reasonable.

■ Turning now to the subordinate's actions, it is clear, as the defendants appear to concede, that the plaintiff has alleged a constitutional violation which was clearly established at the time. If proven true, Deputy Johnson's acts in shoving Whiting into the backseat of the police cruiser could, at minimum, constitute excessive force in violation of the Fourth Amendment. It is clearly established law in this circuit that in order to state a claim for excessive force, a plaintiff must allege (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable. *Ikerd v. Blair,* 101 F.3d 430, 433–34 (5th Cir.1996). Moreover, the allegations against Johnson with regard to her driving in such a fashion as to injure Whiting state a claim under either the Fourth or Fourteenth Amendment, clearly established at the relevant time.[2] The defendants have not argued otherwise.

■ As to the supervisory liability theory advanced against Sheriff Ellington, it is well settled that "[u]nder section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompkins v. Belt,* 828 F.2d 298, 303 (5th Cir.1987). However, the Fifth Circuit has held that a Sheriff not personally involved in the acts that deprived the plaintiff of her constitutional rights is liable under § 1983 if (1) the sheriff failed to train or supervise the officers involved, (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights, and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Thompson,* 245 F.3d at 459. Ordinarily, proof of a single instance, rather than a pattern of similar violations, is insufficient to sustain a claim that a lack of training or supervision caused her constitutional violation. *See Snyder v. Trepagnier,* 142 F.3d 791, 798–99 (5th Cir.1998); *Thompkins,* 828 F.2d at 304–05. Moreover, the inadequacy of the training "must

---

**2.** This matter is discussed *infra.* within the context of the defendants' motion to dismiss.

be obvious and obviously likely to result in a constitutional violation." *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1205 n. 10, 103 L.Ed.2d 412 (1989).

 The Court notes that "deliberate indifference," in the context of § 1983, entails a greater culpability level than mere negligence. This Court is ever wary of the Fifth Circuit's pronouncement that "there is a significant distinction between a tort and a *constitutional* wrong." *Leffall v. Dallas Independent School Dist.,* 28 F.3d 521, 532 (5th Cir.1994) (quoting *de Jesus Benavides v. Santos,* 883 F.2d 385, 388 (5th Cir.1989)) (emphasis in the original). The Seventh Circuit has gone so far as to equate deliberate indifference with criminal recklessness. *See Archie v. City of Racine,* 847 F.2d 1211 (7th Cir.1988) (en banc) (due process context). Judge Easterbrook, writing for the court, explained: "This is the standard used in criminal law, for as we have emphasized the use of the more lenient tort-law definition of recklessness would not adequately recognize the difference between constitutional and common law obligations." *Archie,* 847 F.2d at 1219. While the Fifth Circuit has not cast the deliberate indifference standard in quite such terms, it is clear that mere negligence is inadequate to impose supervisory liability. *See Smith v. Brenoettsy,* 158 F.3d 908, 912 (5th Cir.1998) ("For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference.") (internal citations omitted); *Doe,* 15 F.3d at 453 n. 7 (distinguishing "gross negligence" from "deliberate indifference" noting that the former is a "heightened degree of negligence" whereas the latter is a "lesser form of intent").

 The Court is persuaded that not only was the underlying violation allegedly perpetrated by Johnson clearly established at the relevant time, but Ellington's duty with regard to that violation—as far as training and supervision—was also clearly established. The Fifth Circuit recognized the contours of supervisory liability well before the case-law cited above. For instance, in *Wanger v. Bonner,* 621 F.2d 675 (5th Cir.1980), the court upheld a district court's instruction that a sheriff could be liable for his deputies activities even though he was not a personal participant, "if you find that he failed to adequately supervise or train his deputies, thus causing a violation of plaintiffs' civil rights." *Wanger,* 621 F.2d at 680. A short time after that case, the court observed:

> Although supervisory officials cannot be held liable solely on the basis of their employer-employee relationship with a tortfeasor, they may be liable when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional violation.

*Bowen v. Watkins,* 669 F.2d 979, 988 (5th Cir.1982).[3] Thus, the threshold inquiry of

---

**3.** The Court notes that the "heightened pleading" theory advanced by the defendants in their brief is suspect. First, heightened pleading, as a general matter, is no longer required in § 1983 cases. *See Brown v. Valmet–Appleton,* 77 F.3d 860, 863 n. 11 (5th Cir.1996) ("there no longer exists a *per se* "heightened" pleading requirement in qualified immunity cases"). To the extent that it is applicable, however, the Fifth Circuit has directed a two step procedure under *Schultea,*

outlined *supra.* n. 1. Any requirement that the plaintiff clarify the allegations advanced in his complaint arises solely out of the district court's discretionary authority to order a Rule 7(a) reply. *Schultea,* 47 F.3d at 1433–34. As already discussed, this Court did not order such a reply. Nevertheless, the submitted materials are sufficient to satisfy *Schultea,* at least with regard to the failure to train and supervise claims.

whether the plaintiff's allegations, if true, constitute a constitutional violation, clearly established at the relevant time, is exceeded in this case.

■■■ The issue becomes, therefore, on this summary judgment motion, whether—taking the plaintiff's proffered evidence as true—the plaintiff has put forth adequate evidence to demonstrate that all reasonable officials would conclude that Sheriff Ellington's actions would violate a federally protected right. The Court notes that, in this context, the qualified immunity standard of objective reasonableness is separate and distinct from the subjective deliberate indifference standard necessary to impose § 1983 liability. *See Thompson,* 245 F.3d at 459. Indeed, "[w]hen the defendant moves for summary judgment based on qualified immunity, it is the plaintiff's burden to demonstrate that all reasonable officials similarly situated would have then known that the alleged acts of the defendants violated the United States Constitution." *Id.* As the *Thompson* court recognized, "[t]hat is different from the burden of establishing a genuine issue as to the defendant's deliberately indifferent state of mind." *Id.*

Turning to this objective reasonableness standard, the evidence reveals several incidents involving Brenda Johnson which reflect poorly on her judgment. She admitted that she had been fired twice from the Tunica County Sheriff's Department, once for discharging her firearm inappropriately, and again for excessive force in handcuffing an arrestee. She also conceded that she pled guilty to charges arising out of an incident in which she kicked a police officer at the Memphis airport. Ellington, for his part, testified that he has not requested a background check on Johnson since he became Sheriff. Before becoming Sheriff, Ellington was the Chief Deputy under Sheriff Picket from 1994 through 1998. Prior to that time, he was a deputy

in the Tunica County Sheriff's Department since 1980. Thus, it is clear that, upon becoming Sheriff, he either knew or should have known of the circumstances surrounding Deputy Johnson, and her potential propensity for the over-scrupulous use of force.

By the same token, the evidence demonstrates that Sheriff Ellington delegated to the Internal Affairs Division the task of monitoring his deputies for disciplinary purposes. Apparently, Sheriff Ellington has made it clear to IA that he should be personally notified if any deputy is brought to the division's attention on more than one occasion based on allegations of similar misconduct. Indeed, Ellington has requested IA to notify him even if the division ultimately concludes that no disciplinary action is warranted. Moreover, Ellington testified that in-service training is provided for his deputies. A training director coordinates all the training for employees throughout the county. Also, the county has a contract with a consulting group which provides training to sheriff department employees. The evidence demonstrates that a portion of that training is dedicated to instruction on the use of force and constitutes additional training, above and beyond basic training, in that regard.

■■■ The Court concludes that reasonable supervisors, knowing what Ellington knew, could disagree as to whether his action or inaction was lawful. *See Poe,* 282 F.3d at 125 (Even though plaintiff had adduced enough evidence that Poe needed to supervise his subordinate more closely, reasonable supervisors could disagree as to whether inaction on the part of Poe was unlawful, thus entitling him to qualified immunity). In other words, the plaintiff has failed her burden to show that *all* reasonable officials similarly situated would have then known that Ellington's

acts or omissions violated the Constitution. *See Thompson*, 245 F.3d at 459–60; *Pierce*, 117 F.3d at 872. Sheriff Ellington, to be sure, should have taken a more proactive role in personally monitoring Johnson. Indeed, he was likely negligent in not doing so. However, in light of clearly established law—with its attendant stringent deliberate indifference standard—Sheriff Ellington's delegation to IA to monitor deputies for disciplinary purposes, as well as the training regime he had in place, would not cause a reasonable Sheriff in the same circumstances, objectively speaking, to conclude that the Constitution was being violated.

Having found that an application of the qualified immunity standard in light of clearly established law reveals that any failure to train or supervise on Ellington's part was not "obvious and obviously likely to result in a constitutional violation," *City of Canton*, 109 S.Ct. at 1205 n. 10, the Court concludes that Whiting has failed to make a showing sufficient to survive summary judgment based on qualified immunity for her failure to train and supervise claims. Accordingly, Sheriff Ellington's actions were objectively reasonable in this regard and he is granted qualified immunity in his individual capacity as to those claims.

### 2. Sheriff Ellington's Hiring Decision

▆▆▆▆ The plaintiff, however, also claims that Sheriff Ellington is liable for his decision to hire and/or retain[4] Brenda Johnson in light of her prior behavior. The Supreme Court has made a distinction between liability based on a failure to train or supervise and liability based on a single hiring decision under § 1983. "Predicting the consequence of a single hiring decision ... is far more difficult than predicting what might flow from the failure to train a single law enforcement officer as to a specific skill necessary to the discharge of his duties." *Bd. of the County Comm'ns of Bryan County v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997). In *Brown*, the Court, therefore, rejected the plaintiff's attempt to analogize her inadequate hiring claim to failure to train cases. *Brown*, 520 U.S. at 410, 117 S.Ct. 1382. The Court explained:

> ... a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff.

*Id.* at 412, 117 S.Ct. 1382 (emphasis in the original). Thus, for constitutional liability to attach to the decision-maker based on an inadequate screening of an applicant, it must be said that the Sheriff "would necessarily have reached" the decision that Johnson was a poor candidate because "[Johnson's] use of excessive force would have been a plainly obvious consequence of the hiring decision." *Id.* at 414, 117 S.Ct. 1382. In other words, the plaintiff must demonstrate "deliberate indifference" on the part of the decision-maker. Such deliberate indifference exists where adequate scrutiny of the applicant's background would lead a reasonable supervisor to conclude that the plainly obvious consequences of the decision to hire would be the deprivation of particular constitutional rights. *Id.* at 407, 117 S.Ct. 1382; *Gros v. City of Grand Prairie*, 209 F.3d 431, 433–34 (5th Cir.2000). This involves more than

---

**4.** It is unclear whether Sheriff Ellington actually hired Johnson. This is important because, in the Court's view, inadequate screening of an applicant is something quite different from failure to run background checks on already employed members of the Sheriff's Department upon becoming Sheriff. Nevertheless, as will be seen, the point is moot in this case.

a mere probability that a poorly screened officer would violate her federally protected rights; instead a plaintiff must show that the hired deputy was *highly likely* to inflict the type of injury suffered. *Brown*, 520 U.S. at 414, 117 S.Ct. 1382 (emphasis added).

The Court notes, under the first prong of the qualified immunity analysis, that the contours of this constitutional violation for qualified immunity purposes were clearly established at the relevant time. Ellington became Sheriff in 1998. Thus, if he did hire Johnson, it would have had to have been after the Supreme Court's pronouncements in *Brown*. The question remains, however, whether the plaintiff has properly alleged the constitutional violation. Indeed, "[a] necessary concomitant to the determination of whether the constitutional right asserted by a plaintiff is 'clearly established' at the time the defendant acted is the determination of whether the plaintiff has asserted a violation of a constitutional right at all." *Siegert*, 500 U.S. at 233, 111 S.Ct. 1789.

The Fifth Circuit, visiting the precise issue presented here with regard to a claim based on an act of hiring in a qualified immunity context and taking its cue from the Supreme Court, has held that in order for the plaintiff to survive summary judgment the proffered evidence must be sufficient to create a genuine issue of material fact whether a reasonable officer would conclude that the obvious consequences of hiring a particular officer would be that the particular injury suffered would result to a third party. *Gros*, 209 F.3d at 431. That is, the plaintiff must raise a genuine issue of material fact on the question of deliberate indifference. *Id.* In this case, therefore, Whiting must adduce sufficient evidence to raise a genuine issue of material fact that Ellington was deliberately indifferent in the act of hiring Johnson; not just in general terms, but in particular, to her constitutional right to be free from false arrest and excessive force.

In *Gros* the plaintiffs alleged that the chief of a university police department was deliberately indifferent in hiring a particular officer. A litany of comments were contained in the officer's pre-employment personnel file, including evaluations which suggested the officer had a propensity to draw his weapon too quickly and react in an overly aggressive manner. *Id.* at 434. The Court held, however, that the evidence was insufficient to rise to the level of a constitutional violation.

> To be sure, there are scattered statements in Rogers' personnel file that suggest he was sometimes too aggressive for UTA's campus police department. There are also letters of reprimand and sustained complaints for being overbearing and abusive during a traffic stop. But while these facts suggest that Crum ... might have been negligent in failing adequately to review Rogers's records and in ultimately deciding to hire him, they do not provide sufficient evidence of a deliberate indifference to constitutional rights.

*Id.* at 435.

The *Gros* court relied heavily on the Supreme Court's decision in *Brown*, noting that the opinion "is instructive as to the quantum and quality of evidence of deliberate indifference that is necessary." *Id.* at 433. In *Brown*, Reserve Deputy Stacy Burns had been convicted of using excessive force for badly injuring a woman in the process of wresting her from a car. He also had a criminal record that included arrests for driving under the influence, resisting arrest, public drunkenness and a conviction for assault and battery. Faced with this record, the Supreme Court held that the Sheriff's failure to examine the background of Burns did not "reflect a conscious disregard for a high risk that

Burns would use excessive force in violation of respondent's federally protected right." *Brown,* 520 U.S. at 415–16, 117 S.Ct. 1382.

Similarly, in *Aguillard v. McGowen,* 207 F.3d 226, 230 (5th Cir.2000), the deputy officer was convicted of murder for wrongfully shooting a third party while on duty. His record revealed, *inter alia,* a report of an incident in which he allegedly pistol-whipped a teenage boy who was driving around his apartment complex and that he had previously threatened the mother of a juvenile with arrest. Despite this evidence, the Fifth Circuit held that the deputy "had never wrongfully shot anyone before, nor did his record reveal him to be likely to use excessive force in general or possess a trigger-happy nature in particular." *Aguillard,* 207 F.3d at 230. As a result, held the court, while the employment decision may have been negligent, the error did not reach "constitutional cognizance." *Id.*

■ A synthesis of the above authority makes clear to this Court that Whiting has done nothing more than allege "deliberate indifference" in broad and conclusory terms. Taking all of Whiting's proffered evidence as true, the Court concludes that Whiting has failed to advance sufficient evidence of a violation of a constitutional right with regard to Sheriff Ellington's decision to hire Johnson. First, nothing in Johnson's background suggests that she would be likely, let alone *highly likely,* to wrongfully arrest a third party. Moreover, of the two incidents that can be construed as suggesting a propensity toward excessive force, one took place in 1985, a full thirteen or so years before the incidents in question here. *See Brown,* 520 U.S. at 413, 117 S.Ct. 1382 (incident which took place in college was too remote

to create an obvious risk of use of excessive force on the part of the deputy). The second incident, the handcuffing of an arrestee too tightly, while perhaps branding Ellington negligent for his hiring decision, fails to make it plainly obvious that Johnson would be highly likely to commit Fourth Amendment violations in the particular manner plaintiff has alleged here.[5] Finally, the third incident, the discharging of her weapon into the air, has little to do with false arrest or excessive force.

In short, Johnson's background is rather placid compared to that of the deputy in *Brown.* Nothing in her background would have made it obvious to a reasonable supervisor that she was *highly likely,* in such a manner as to suggest more than a mere probability, to shove someone into a car with too much force or drive like a maniac in order to hurt an arrestee. *See Brown,* 520 U.S. at 412, 117 S.Ct. 1382 (requiring a "strong" connection between the background of the particular applicant and the "specific" violation alleged.) To be sure, as in *Brown* and *Aguillard,* the employment decision was likely a negligent one. Indeed, in hindsight, it appears that Johnson should not have been hired. But, as already explained, negligence is something quite different than constitutional injury. Here, with *Brown* and *Aguillard* as benchmarks, the latter is conspicuously absent from the record.

## II. Motion to Dismiss

### A.

In ruling on a motion pursuant to Rule 12(b)(6), the court construes the allegations in the Complaint in the light most favorable to the plaintiff. *Collins v. Morgan Stanley Dean Witter,* 224 F.3d 496, 498 (5th Cir.2000). Taking the plaintiff's

---

**5.** This is especially so since, in the Fifth Circuit, handcuffing an arrestee too tightly, without more, does not amount to excessive force.

*See Glenn v. City of Tyler,* 242 F.3d 307, 314 (5th Cir.2001).

allegations as true, dismissal is appropriate when it appears certain that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Id.* A court need not, however, accept as true allegations that are conclusory in nature. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.,* 677 F.2d 1045, 1050 (5th Cir.1982).

## B.

■ The Court begins its analysis with the familiar principle that § 1983 "is not itself a source of substantive rights," but is a vehicle "for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Thus, the first step in any such claim is to identify the specific constitutional right allegedly infringed. *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Whiting alleges several constitutional claims in her complaint, among them violations of the Sixth and Eighth Amendment and the Equal Protection Clause of the Fourteenth Amendment. The Court addresses each in turn.

■ The Court notes at the outset, that few, if any, of the allegations in the complaint with regard to these claims are elucidated in any significant fashion. Indeed, with regard to her Sixth Amendment claim, for instance, Whiting has not specified which Sixth Amendment right she believes has been violated—i.e. right to a speedy trial, right to counsel, or right to impartial jury. The allegations in this respect are so vague that the Court is led inextricably to the conclusion that the Sixth Amendment claim must be dismissed.

■ Whiting's Eighth Amendment claim fares no better. The Eighth Amendment's prohibition against cruel and unusual punishment is inapplicable where, as here, the detention of the complainant did not directly result from the conviction of a crime. *See Edwards v. Johnson,* 209 F.3d 772, 778 (5th Cir.2000); *Ortega v. Rowe,* 796 F.2d 765, 767 (5th Cir.1986) *cert. denied* 481 U.S. 1013, 107 S.Ct. 1887, 95 L.Ed.2d 495. Indeed, "a pretrial detainee's constitutional claims are considered under the due process clause instead of the Eight Amendment." *Id.,* (citing *Bell v. Wolfish,* 441 U.S. 520, 535 n. 6, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979)). Whether Whiting could be considered a "pretrial detainee" is a different matter. What is clear, however, is that the Eighth Amendment provides her no recourse here.

■ The issue with regard to the post-arrest allegations that Whiting levels against Johnson, therefore, becomes whether the Fourth or Fourteenth Amendment governs. The Supreme Court has left open the question of which amendment governs post-arrest, but pre-arraignment. *See Graham,* 490 U.S. at 395 n. 10, 109 S.Ct. 1865 ("Our cases have not resolved the question whether the Fourth Amendment continues to provide individuals with protection against the deliberate use of excessive physical force beyond the point at which arrest ends and pretrial detention begins, and we do not attempt to answer that question today"). Circuits are split on the question. As one court stated, "[b]etween arrest and sentencing lies something of a legal twilight zone." *Wilson v. Spain,* 209 F.3d 713, 715 (8th Cir. 2000). Some Circuits, for example, apply the Fourth Amendment reasonableness standard to excessive force claims arising post-arrest, setting arraignment as the line of demarcation between the Fourth and Fourteenth Amendments. In these circuits, the Fourth Amendment reasonableness standard applies until the arrestee appears before a neutral magistrate for arraignment or probable cause hearing, or until the individual leaves the joint custody

of the arresting officers. *See, e.g., Wilson,* 209 F.3d at 716; *Barrie v. Grand County,* 119 F.3d 862, 866 (10th Cir.1997); *Pierce v. Multnomah County,* 76 F.3d 1032, 1042–43 (9th Cir.1996); *Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989); *McDowell v. Rogers,* 863 F.2d 1302, 1306–07 (6th Cir.1988). Other Circuits focus on the Due Process Clause of the Fourteenth Amendment and apply a substantive due process standard at the moment the incidents of arrest are complete. *See, e.g., Riley v. Dorton,* 115 F.3d 1159, 1161–64 (4th Cir.1997) (en banc); *Cottrell v. Caldwell,* 85 F.3d 1480, 1490 (11th Cir.1996); *Wilkins v. May,* 872 F.2d 190, 192–95 (7th Cir.1989). On facts similar to the instant case, the Eighth Circuit has applied Fourth Amendment standards to a claim of excessive force allegedly suffered by an individual in being restrained in the back of a police car post-arrest. *See Mayard v. Hopwood,* 105 F.3d 1226 (8th Cir.1997).

▮▮ The Fifth Circuit has taken a somewhat hybrid approach. As a general rule, substantive due process applies in the Fifth Circuit after the fact of arrest. *See Valencia v. Wiggins,* 981 F.2d 1440, 1443–45 (5th Cir.1993). However, the court has also noted that the pertinent constitutional provisions overlap in certain factual contexts. *See Petta v. Rivera,* 143 F.3d 895, 910–914 (5th Cir.1998) (recognizing that Fourth Amendment standards are sometimes used in assessing claims which should actually be governed by substantive due process). On these facts, the Court concludes that the Fourth Amendment applies to Whiting's claim arising out of the post-arrest events in the police car. In so holding, the Court is guided by the Fifth Circuit's decision in *Valencia,* wherein the

Court, although concluding that the Fourteenth and not the Fourth Amendment applied, stated:

> We do not believe that the Fourth Amendment provides an appropriate constitutional basis for protecting against deliberate official uses of force occurring, as in this case, *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time.

*Valencia,* 981 F.2d at 1443–44 (emphasis in the original). The proximity to the arrest in this case, unlike in *Valencia,* transpired so closely to the actual arrest, that, under *Graham,*[6] the most reasoned approach is to apply the Fourth Amendment. This is especially so since Whiting was still in the custody of the arresting officer, having never left that custody. *Cf. Phelps v. Coy,* 286 F.3d 295, 300–01 (6th Cir.2002) (distinguishing *Valencia* on similar grounds and holding that the Fourth Amendment governed an excessive force claim by an arrestee which was initiated post-arrest, even up to booking of the individual, where the same arresting officer was involved); *See also Powell v. Gardner,* 891 F.2d 1039, 1044 (2d Cir.1989) ("Fourth Amendment standard probably should be applied at least to the period prior to the time when the person arrested is arraigned or formally charged, and remains in the custody (sole or joint) of the arresting officer"). Thus, the Court construes Whiting's Eighth Amendment claim as one arising under the Fourth Amendment and its attendant "objective reasonableness" standard. Accordingly, the Eighth Amendment claim is dismissed, but the Fourth

---

**6.** As the *Valencia* court noted, the Supreme Court's decision in *Graham* indicates that a seizure under the Fourth Amendment does not end the moment police gain custody and control over a suspect. *Id.* Indeed, the *Gra-* *ham* Court applied the Fourth Amendment's "objective reasonableness" standard even though the suspect was handcuffed and securely within police custody at the time the alleged police abuse transpired.

Amendment claim based on the allegations of Johnson's driving in such a manner as to cause injury to Whiting remains.[7]

Finally, "to state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir.1999) (internal citations omitted). Whiting has not alleged whether she is a member of a protected class, nor has she specified how she was discriminated against, intentionally or otherwise, on the basis of such membership. Thus, she leaves the Court to its own devices, presumably, to infer as much. As a result, her allegations are plainly insufficient to form the basis of an Equal protection claim.

### III. State Law Claims

#### A.

The defendants further aver that Whiting's state law claims should be dismissed for failure to comply with the Mississippi Tort Claims Act ("MTCA"), Miss. Code Ann. § 11–46–1. The MTCA provides in relevant part:

(1) After all procedures within a governmental entity have been exhausted, any person having a claim for injury arising under the provisions of this chapter against a governmental entity or its employee shall proceed as he might in any action at law or in equity; provided, however, that ninety (90) days prior to maintaining an action thereon, such person shall file a notice of claim with the chief executive officer of the governmental entity, and, if the governmental entity is participating in a plan administered by the board pursuant to Section 11–46–7(3), such chief executive officer shall notify the board of any claims filed within five (5) days after the receipt thereof. (2) The notice of claim required by subsection (1) of this section shall be in writing, delivered in person or by registered or certified United States mail. Every notice of claim shall contain a short and plain statement of the facts upon which the claim is based, including the circumstances which brought about the injury, the extent of the injury, the time and place the injury occurred, the names of all persons known to be involved, the amount of money damages sought and the residence of the person making the claim at the time of the injury and at the time of filing the notice.

The Mississippi Supreme Court has abolished a strict compliance standard with the MTCA notice provisions, opting instead for a more relaxed "substantial compliance" standard. *Carr v. Town of Shubuta*, 733 So.2d 261, 263 (Miss.1999); *Reaves ex rel. Rouse v. Randall*, 729 So.2d 1237 (Miss. 1998). The Court, in defining the contours of the substantial compliance standard, has stated:

Notice is sufficient if it substantially complies with the content requirements of the statute. What constitutes substantial compliance, while not a question of fact but one of law, is a fact-sensitive determination. In general, a notice that is filed within the [requisite] period, informs the municipality of the claimant's intent to make a claim and contains sufficient information which reasonably affords the municipality an opportunity to

---

7. Consequently, the Court dismisses Whiting's claim based on, what the plaintiff terms, is her right to "freedom from arbitrary government actions which are so outrageous as to shock the conscience of a civilized society," which the Court interprets as a claim under the Due Process Clause of the Fourteenth Amendment. Although unclear, Whiting is presumably attempting to rely on a substantive due process standard for such a claim.

promptly investigate the claim satisfies the purpose of the statute and will be held to substantially comply with it.

*Carr,* 733 So.2d at 263 (citing *Collier v. Prater,* 544 N.E.2d 497, 498 (Ind.1989)).

### B.

█ In the instant case, Whiting admits that she wholly failed to supply any notice, let alone the prescribed 90 day notice. Instead she argues that since service was effected on the "chief executive officers" of the county and her complaint contained adequate information for the county to conduct an investigation and adduce the necessary information, this Court should deem the MTCA substantially complied with and refuse to dismiss her state law claims. In support of her argument, Whiting cites *City of Pascagoula v. Tomlinson,* 741 So.2d 224 (Miss.1999), a case in which the plaintiff failed to comply with the 90 day waiting period, but nevertheless was allowed to proceed. *Tomlinson,* however is inapposite to the instant action. In *Tomlinson,* the plaintiff did file a notice of claim pursuant to § 11–46–1 fifteen days before filing suit. The Court held that the notice was substantially compliant with the provisions of the MTCA and the appropriate remedy for the plaintiff failing to wait 90 days to file suit was for the city to ask for a stay of proceedings, a waiver of which was effected when the city neglected to do so. *Tomlinson,* 741 So.2d at 228–29.

In contrast to *Tomlinson,* Whiting provided no notice whatsoever to Tunica County pursuant to the MTCA before filing suit. In the Court's view, "substantial compliance" is something quite apart from non-compliance.[8] If the Court were to adopt Whiting's theory, all a plaintiff need do to substantially comply with the MTCA

is file suit and serve the chief executive officer of the state entity, as long as the complaint complies with Miss.R.Civ.P. 8. Such a rule, the Court believes, would be severely inimical to the intent of the legislature in enacting the MTCA and, likewise, the policy of the Mississippi Supreme Court in requiring at least substantial compliance. *See Carr,* 733 So.2d at 266 (collecting cases in which no notice was submitted to the state entity and noting that these cases would fail under the substantial compliance standard).

In short, Whiting has failed, under the substantial compliance standard, to comply with the notice provisions of the MTCA. Accordingly, her pendent state law claims are dismissed.

### IV. Tunica County Sheriff's Department Amenability to Suit

### A.

█ The Tunica County Sheriff's Department ("TCSD") is a named defendant in this suit. The defendants argue that the TCSD should be dismissed as an entity not amenable to suit. An entity's capacity to be sued must be determined by reference to the law of the state in which the district court sits. Fed.R.Civ.P. 17(b). In order for a the TCSD to be amenable to suit, it must be determined that it enjoys a separate legal existence than that of the county. *See Darby v. Pasadena Police Department,* 939 F.2d 311, 313 (5th Cir. 1991). Absent any showing by the plaintiff that the TCSD enjoys such an existence under state law, the Court concludes that the TCSD is not a proper party to this lawsuit. Thus, the TCSD is dismissed from the case and the Court construes the

---

**8.** *See* Merriam–Webster's Collegiate Dictionary (2002) defining "substantial" as "being largely but not wholly that which is specified." By the plain meaning of the word, at

least some compliance, therefore, with the specifications of the legislature, must be found under a substantial compliance standard.

claims leveled against it as claims against the county.

## CONCLUSION

After careful consideration, the Court finds that the Sheriff Ellington's motion for summary judgment on the issue of qualified immunity is well taken and should be granted. The defendant's motion to dismiss claims based on the Sixth Amendment, Eighth Amendment, equal protection clause and all pendent state law claims is likewise well taken and should be granted. Moreover, the plaintiff's supposed substantive due process claim is also dismissed. Finally, the Tunica County Sheriff's Department is not a proper party to this lawsuit and should, accordingly, be dismissed. A separate order in accordance with this opinion will be so entered.